A94A1342. DIXON v. THE STATE.
(448 SE2d 40)

BLACKBURN, Judge.
Following a trial by jury, the appellant, Willie Dixon, Jr., was

convicted of the February 9, 1993, armed robbery of a convenience store in Sandersville, Georgia, and was sentenced to life in prison. His motion for new trial was denied by the trial court and this appeal followed.

The evidence produced at trial showed that Dixon entered the Handi Corner Food Store at approximately 10:45 p.m. wearing a dark ski mask and a jacket. Wielding a gun wrapped in a towel, Dixon demanded only dollar bills from the store's cashier, refusing to accept coined money. After the cashier gave Dixon dollar bills contained in one of the store's drawers, Dixon left the store. The cashier followed him outside the store in a well-lit area and Dixon removed his mask. The cashier recognized Dixon during the robbery from his eyes and his braided hairstyle as one of the store's regular customers and as an acquaintance whom she had known for 15 years, and upon observing him unmasked, her earlier suspicions of his identity were confirmed. The police were summoned, and she provided police officers with Dixon's nickname, surname, address, the name of his live-in girl friend, and a description of him. She also identified Dixon as the robber at the police station shortly after the incident and in court during the trial.

When the police located Dixon at the address provided by the victim, a scattered pile of dollar bills was found underneath a chair in the living room of the apartment, a black ski mask was found under a couch, and a torn white towel was seen on a coffee table. However, the weapon used in the robbery was not discovered. Dixon was subsequently arrested and taken to the police precinct where he was apprised of his *Miranda* rights.

The next day, Jimmy Smith, an investigator with the Sandersville police department, conducted a 40 minute tape-recorded interview with Dixon during which Dixon admitted that he had robbed the store after he had ingested some tainted contraband but denied using a gun to effectuate the robbery. Prior to this interview, Dixon was again apprised of his *Miranda* rights, and signed a card delineating those rights, indicating that he understood them.

Over objection, the State introduced evidence of an armed robbery committed two days before the robbery in question for which Dixon was arrested. The robbery victim testified that a light-complected man entered the Jet Food Store where she worked wearing a black ski mask and a jacket. While wielding a gun wrapped in a turquoise towel, the assailant demanded dollar bills and refused to accept coined money. The witness could not identify Dixon as her assailant.

1. Dixon initially challenges the trial court's refusal to suppress the "one-on-one" identification of him by the victim shortly after his arrest, asserting that the identification was impermissibly and inher-

ently suggestive.

"Pre-indictment confrontations should be scrutinized to determine if they are unnecessarily suggestive and conducive to irreparable mistaken identification. . . . Although the practice of showing suspects singly to a witness for identification purposes has been widely condemned, our appellate courts have consistently upheld the admission of in-court identifications when prior one-on-one showups are reasonably and fairly conducted at or near the time of the offense." (Citations and punctuation omitted.) *McClendon v. State*, 210 Ga. App. 404, 405 (1) (436 SE2d 524) (1993).

In this case, the robbery victim recognized Dixon during the robbery as a regular customer and as an acquaintance and had ample opportunity to observe him once he removed his mask in a well-lit area adjacent to the store. Under the totality of the circumstances, the one-on-one showup, which was made shortly after Dixon's arrest following the commission of the offense, was not unreasonable or unduly suggestive and did not improperly taint the victim's in-court identification of Dixon as the assailant. Id.; *Matchett v. State*, 190 Ga. App. 227 (378 SE2d 404) (1989). The resolution of any alleged inconsistencies in the victim's recollection of the color of the mask worn by Dixon was for the trier of fact. See *Norris v. State*, 258 Ga. 889 (1) (376 SE2d 653) (1989); *Sawyers v. State*, 211 Ga. App. 668 (3) (440 SE2d 256) (1994).

2. Next, Dixon argues that his confession was inadmissible because it was induced by the promise of a lighter sentence if he confessed to the commission of the earlier robbery. Even assuming arguendo that it can be construed as a promise of a lighter sentence for commission of the other robbery, the comment was made after Dixon confessed to the commission of the robbery in question and hence, could not have been an inducement to the confession. This court must accept a trial court's determination of the voluntariness of a confession unless the trial court's decision was clearly erroneous, and under the facts of this case, we find no error in the trial court's admission of Dixon's incriminating statement. *Clay v. State*, 209 Ga. App. 266, 268 (1) (433 SE2d 377) (1993).

3. Dixon, who is African-American, questions the prosecution's exercise of all of its peremptory strikes to remove African-Americans from the venire, asserting that the jury selection process was racially discriminatory in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

We agree with Dixon that the prosecution's overwhelming use of its peremptory strikes against prospective black jurors on the venire warrants an inference of racial discrimination. *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987); *Kelly v. State*, 209 Ga. App. 789 (1) (434 SE2d 743) (1993). Thus, our analysis must focus on whether the

prosecution sufficiently showed that a discriminatory purpose was not involved in its selection of the trial jury by providing racially-neutral, case-related, clear and reasonably specific explanations for the exercise of the challenges. *Gamble*, supra.

A review of the transcript shows that the reasons offered by the prosecution were sufficiently race neutral to withstand the *Batson* challenge. The prosecutor explained that the jurors in question were stricken based upon their commission of criminal offenses in the past, familiarity with the case, lack of attentiveness, termination from a law enforcement position following struggles with substance abuse, or past representation by defense counsel. Most of the strikes were exercised by the prosecution based upon suspicions about the prospective juror's impartiality, which may justify an exercise of a peremptory strike. *Kelly*, supra. Giving great deference to the trial court's finding that racially-neutral reasons were provided by the prosecution as we are required to do, we find no error in the trial court's denial of Dixon's *Batson* motion. *Higginbotham v. State*, 207 Ga. App. 424 (3) (428 SE2d 592) (1993).

4. Dixon further argues that the trial court erred in allowing his girl friend to testify over his objection because her name was not included on the list of witnesses provided by the State as required by OCGA § 17-7-110. The name of the witness was provided to Dixon on the pre-trial docket approximately 13 days prior to trial. However, in making the objection, Dixon did not request a continuance or otherwise seek an opportunity to conduct an interview prior to the witness being called to testify.

"The purpose of OCGA § 17-7-110 is to insure that an accused is not confronted at trial with testimony against him from witnesses whom he has not had an opportunity to interview prior to trial. . . . [T]he proper remedy when a witness is called whose name was not on the list is to request a continuance, not the exclusion of the witness' testimony." (Citations and punctuation omitted.) *Grace v. State*, 210 Ga. App. 718, 721 (5) (437 SE2d 485) (1993). Under the circumstances, the admission of this testimony was not in contravention of the statute or otherwise error. See *Tyus v. State*, 196 Ga. App. 857 (3) (397 SE2d 194) (1990).

5. Lastly, Dixon asserts that the State did not meet the threshold requirement for the admission of evidence of the prior robbery by failing to show that the offenses were substantially similar or that he was the perpetrator of the prior offense as required under *Williams v. State*, 261 Ga. 640 (2) (409 SE2d 649) (1991). We agree with Dixon that the State did not meet the three-prong test enunciated in *Williams* because of the absence of evidence linking him to the prior occurrence and absence of evidence establishing that he was the perpetrator. Under other circumstances, the erroneous admission of this

testimony might have been harmful error, requiring reversal. However, considering the overwhelming evidence of Dixon's guilt of the offense charged, including the eyewitness testimony by a 15-year acquaintance and Dixon's voluntary confession to the commission of the offense, we find that it was highly unlikely that the evidence contributed to Dixon's conviction. See *Bowdry v. State*, 211 Ga. App. 626 (440 SE2d 59) (1994).

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 4, 1994.

*E. Allen Smith*, for appellant.

*Richard A. Malone, District Attorney, Anne L. Latta, Assistant District Attorney*, for appellee.