## A09A1541. ALLEN v. THE STATE.
(683 SE2d 343)

BLACKBURN, Presiding Judge.

Following a jury trial, Andrew O. Allen appeals his conviction for aggravated assault,[1] arguing that one juror was improperly impaneled in that she was not summoned nor on the jury list, and that the court erred in denying his *Batson* motion that challenged the State's striking of six African-American jurors. We hold that Allen has waived any objection regarding the unsummoned juror and that evidence supported the trial court's finding that the State's reasons for striking the challenged jurors were race-neutral. Accordingly, we affirm.

Viewed in favor of the verdict, *Davis v. State*,[2] the evidence shows during a scuffle with a weaponless man at a café, Allen pulled a gun and shot the man in the stomach. Indicted for aggravated assault, Allen claimed self-defense. At the end of voir dire (which was not transcribed), Allen challenged the State's peremptory strikes as racially based, which challenge the court denied. See *Batson v. Kentucky*.[3] After the jury found him guilty, Allen moved for a new trial, arguing that one juror (who had not been summoned nor was

---

[6] *Phagan v. State*, 243 Ga. App. 568, 570 (2) (533 SE2d 757) (2000).
[1] OCGA § 16-5-21 (a) (2).
[2] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).
[3] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

on the jury list) should not have been impaneled, that his trial counsel had rendered ineffective assistance in failing to object to this juror, and that the court had erred in denying his *Batson* motion. Following two evidentiary hearings, the court denied the motion for new trial.

1. Allen complains that a juror, who was not summoned but appeared in the belief she had been summoned, was improperly impaneled on the jury. Such a complaint must be made before a verdict is rendered and is therefore too late here. Regarding Allen's claim that trial counsel acted ineffectively in failing to raise this objection timely, Allen's failure to ask trial counsel about this matter at the new-trial hearing means that we must presume counsel was acting strategically, thereby vitiating any ineffective assistance claim.

(a) *The objection was waived.* A jury summons was duly issued for Brenda Jean Davis (born 28 June 1974) at a certain address, which summons was sent to that address. The mother of Brenda Jean Davis, who bore the same name, received the summons and believed it was directed at her, as no birth date appeared on the summons and as her daughter had since married and moved away. The mother appeared at the courthouse and, after voir dire questioning, was accepted by the State and Allen as a juror and served on the jury that decided Allen's case. Not until after the trial did Allen claim that the wrong "Brenda Jean Davis" had been impaneled on the jury, at which time Allen moved for a new trial on this basis. Allen emphasized that the mother was not on the list duly created by the jury commissioners for jury service.

This objection comes too late. As explained in *Gormley v. Laramore*,[4]

> [j]urors are disqualified for two classes of reasons: propter affectum, as when they are unfit to sit by reason of some affirmative fault, as interest, bias, infancy, etc.; and propter defectum, as when they are wanting in some qualification required by law, as residence, age, etc. The objection here is, that the juror's name[ ] was not on the jury list as made out by the commissioners. . . . Clearly this is a disqualification propter defectum. It is the want of a qualification prescribed by law. It does not appear but that the man is just as good a juryman for the party objecting as any other. This Court held in [*Costly v. State*[5]] that objections to jurymen propter

---

[4] *Gormley v. Laramore*, 40 Ga. 253, 253-254 (1869).
[5] *Costly v. State*, 19 Ga. 614, 628 (1) (1856).

defectum must be made before trial. We see no reason to change the rule there laid down. If parties desire to have their cases tried by such jurymen only as are on the list, they must make the objection before the country has put itself to the trouble to try the case.

The fact that the party objecting was not informed of the want of qualification of the jurymen does not help the case. With proper diligence he could have been informed.

Since *Gormley*, Georgia courts have consistently held that objections to the manner in which a jury is chosen, when such objections do not relate to the favor or bias of the juror but rather to his or her qualifications to serve on a jury (such as being on the jury commissioner's list or properly summoned), come too late when raised after the verdict is rendered, even if the defect was not discovered until after the verdict. See *Fudge v. State*[6] (juror's name was not on the jury list); *Thomasson v. Hudmon*[7] (jurors were not selected from juror box as then required by law); *Embry v. State*[8] ("[t]hat a juror's name is not on the jury list or in the jury box is not cause for a new trial, when the point is raised for the first time after verdict. Being an objection propter defectum, it should be discovered and urged before verdict"); *Toole v. I. T. T. Grinnell Corp.*[9] ("a challenge to the manner in which the jury panel is drawn must be made before verdict, no matter when it is discovered . . ."); *Hannah v. State*[10] (jurors were not duly drawn from list nor summoned as provided by law).

The idea is that "[a] juror incompetent propter defectum is made specially competent by the act of the parties in allowing him to serve without challenge, and a verdict will not be set aside for such cause." (Punctuation omitted.) *Moton v. State*.[11] Even if the parties were unaware of the defect, "[t]he theory of the law is that such a defect could have been discovered before the juror was accepted, as well as after, with exercise of proper diligence, and . . . that a juror so disqualified would be as fair a juror to one side as to the other."

---

[6] *Fudge v. State*, 190 Ga. 340, 342 (1) (9 SE2d 259) (1940).

[7] *Thomasson v. Hudmon*, 185 Ga. 753, 755-756 (3) (196 SE 462) (1938).

[8] *Embry v. State*, 138 Ga. 464 (1) (75 SE 604) (1912).

[9] *Toole v. I. T. T. Grinnell Corp.*, 156 Ga. App. 591 (1) (275 SE2d 97) (1980).

[10] *Hannah v. State*, 57 Ga. App. 173 (194 SE 832) (1938).

[11] *Moton v. State*, 256 Ga. App. 594, 595 (2) (569 SE2d 264) (2002). *Harper v. State*, 283 Ga. 102, 103-105 (1) (657 SE2d 213) (2008), cited by Allen, is distinguishable in that *Harper* involved service by the wrong person *on a grand jury*. Because a defendant plays no role in choosing the members of a grand jury, he cannot acquiesce in the impaneling of a wrong person on that jury.

*Lindsey v. State.*[12]

Here, Allen accepted the mother of Brenda Jean Davis as a juror to serve on the jury that decided his case and raised no objection about her service until after the verdict was rendered. Moreover, even though his trial counsel had the jury list in hand that showed the real Ms. Davis's birthday to be in 1974, the appearance of her mother who was some 20 years older did not cause him to object. There is no reason to believe she was not as fair to one side as to the other. This post-trial objection was untimely and was therefore waived.

(b) *No ineffective assistance claim was proven.* Allen did not meet his burden of showing that counsel's failure to object to this juror timely constituted ineffective assistance. To prove his claim of ineffective assistance, Allen was required to show that counsel's performance was deficient and that the deficiency prejudiced Allen. *Domingues v. State.*[13] Allen "must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct." (Punctuation omitted.) Id.

Georgia law is clear that "[t]he decision on which jurors to accept and which jurors to strike is one of trial strategy. . . ." (Punctuation omitted.) *Port v. State.*[14] Yet while examining his counsel at the hearing on his motion for new trial, Allen did not pose a single question to his trial counsel concerning the impaneling of the mother of Brenda Jean Davis. For example, Allen did not ask his trial counsel to explain why counsel not only raised no objection to her serving on the jury but instead affirmatively accepted her as a juror on the case. By failing to ask such questions, "he has not overcome the presumption that his trial counsel acted within the range of reasonable, professional conduct." *Hubert v. State.*[15] "Because [Allen] failed to question trial counsel about this issue at the hearing on his motion for new trial, any decision not to object is presumed to be a strategic one that does not amount to ineffective assistance." *John v. State.*[16] See *Locher v. State.*[17]

2. Allen argues that the trial court erred in denying his *Batson* motion that asserted that the State used racially-discriminatory reasons to strike six African-Americans from the jury. Because evidence supported the trial court's findings that the State's reasons for striking these jurors were race-neutral, we affirm.

---

[12] *Lindsey v. State*, 57 Ga. App. 158, 160 (2) (194 SE 833) (1938).

[13] *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

[14] *Port v. State*, 295 Ga. App. 109, 113 (2) (c) (671 SE2d 200) (2008).

[15] *Hubert v. State*, 297 Ga. App. 71, 77 (7) (a) (676 SE2d 436) (2009).

[16] *John v. State*, 282 Ga. 792, 796 (7) (c) (653 SE2d 435) (2007).

[17] *Locher v. State*, 293 Ga. App. 67, 71 (2) (b) (666 SE2d 468) (2008).

The trial court follows a three-step test for evaluating challenges to peremptory strikes on *Batson* grounds:

> First, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. Second, the burden of production then shifts to the proponent of the strike to give a race-neutral reason for the strike. Third, after hearing from the opponent of the strike and considering the totality of the circumstances, the trial court then decides whether the opponent of the strike carried his burden of proving discriminatory intent in fact motivated the strike.

(Punctuation omitted.) *Bethune v. State.*[18]

> The preliminary issue of whether the defendant established a prima facie case of discrimination is moot, however, where the State offers a purportedly race-neutral explanation for the peremptory challenge and the trial court rules on the ultimate question of intentional discrimination.

*Bethune*, supra, 291 Ga. App. at 676 (2). Here, the State offered such explanations for each of the six jurors, and thus we go directly to step three.

The court considered the State's proffered reasons to explain its striking of the six jurors, and, after considering any further argument that Allen chose to give, credited those reasons and found them to be race neutral.[19] Thus, the court found that Allen failed to carry his burden of proving illegal discrimination. Allen challenges this finding. "The trial court's finding that [Allen] failed to satisfy his burden of proof is entitled to great deference and will be accepted unless clearly erroneous." *Floyd v. State.*[20] We hold that evidence supported the court's findings as to each strike.

As to the first juror, the State explained that the juror had previously served on a hung jury. See *Richard v. State*[21] ("[w]e have previously held that strikes based on a panel member's service on a prior 'hung jury' in a criminal case were not discriminatory"). As to the second and sixth jurors, the State explained that they both had

---

[18] *Bethune v. State*, 291 Ga. App. 674, 676 (2) (662 SE2d 774) (2008).

[19] Focusing on semantics, Allen notes that as to some of the prospective jurors, the court actually stated that the juror was race neutral as opposed to stating that the reason for the strike was race neutral. It is obvious to us that the trial court was referring to the reasons proffered by the State as race neutral, not to the juror himself.

[20] *Floyd v. State*, 272 Ga. 65, 68 (3) (525 SE2d 683) (2000).

[21] *Richard v. State*, 223 Ga. App. 98, 99 (476 SE2d 849) (1996).

spent time with Allen personally and knew some of his family. See *Bass v. State*[22] (a prospective juror's knowledge of the defendant and his family is a legitimate explanation for a peremptory strike). As to the third juror, the State noted that not only did this juror know Allen and Allen's sister, but he knew a prosecution witness and was also unemployed. See *Overton v. State*[23] ("[a] juror knowing a witness is also a race-neutral reason for exercising a peremptory challenge"); *Ware v. State*[24] ("the [S]tate may strike a prospective juror because of [his] lack of employment"). As to the fourth juror, the State explained that the 21-year-old juror was young and also inattentive; Allen did not dispute this nor make a further showing. See *Robert v. State*[25] (age can be a race-neutral reason for striking a juror); *Jackson v. State*[26] (inattentiveness is a race-neutral reason). As to the fifth juror, the State explained that her husband had committed a murder at the same café some years ago. See *Floyd*, supra, 272 Ga. at 68 (3) ("[t]he criminal history of a prospective juror's family is a sufficiently neutral reason to justify a peremptory strike") (punctuation omitted).

In his motion for new trial and on appeal, Allen focuses primarily on the fourth juror, who was struck for her youthfulness and inattention. Allen notes that later in the juror selection process, the State did not use a peremptory strike against a 19-year-old white man, who ended up serving on the jury. Pretermitting whether Allen raised this issue timely, and setting aside that the failure to strike the young white juror occurred later in the process when the State's strikes were waning, we note that the second-stated basis for the strike (the juror's inattentiveness) alone justified the strike as race-neutral. See *Jackson*, supra, 220 Ga. App. at 99; *Dixon v. State*.[27] In *Reed v. State*,[28] the Supreme Court of Georgia held where the State's first-stated reason applied also to jurors who were not struck, the second-stated reason of inattentiveness alone justified the trial court's ruling that the State's strike was legitimate. See *Robert*, supra, 227 Ga. App. at 26-27 (the State struck a teenage juror as too young and inexperienced; although another teenage juror was accepted, that second teenager was more experienced, and thus the trial court was justified in finding that no discrimination had occurred).

---

[22] *Bass v. State*, 271 Ga. App. 228, 232 (4) (609 SE2d 386) (2005).

[23] *Overton v. State*, 295 Ga. App. 223, 240 (9) (671 SE2d 507) (2008).

[24] *Ware v. State*, 258 Ga. App. 706, 708 (2) (574 SE2d 898) (2002).

[25] *Robert v. State*, 227 Ga. App. 26 (488 SE2d 105) (1997).

[26] *Jackson v. State*, 220 Ga. App. 98, 99 (469 SE2d 264) (1996).

[27] *Dixon v. State*, 214 Ga. App. 374, 377 (3) (448 SE2d 40) (1994).

[28] *Reed v. State*, 279 Ga. 81, 82 (2) (610 SE2d 35) (2005).

Allen's citation to *Snyder v. Louisiana*[29] is unavailing, as in *Snyder* the United States Supreme Court found that the first-offered explanation was so plainly implausible and pretextual that it necessarily showed discriminatory intent by the prosecution. 128 SC at 1211-1212. This obvious pretext thus infected the second-stated reason. Id. We do not have such a plain showing of a pretext here. See *Knuckles v. State*[30] ("[d]efendant's argument would be correct if the [first-stated] explanation was clearly racially motivated *on its face*") (emphasis in original). See also *George v. State*[31] (first-stated reason was so implausible and fantastic that such infected other stated reasons). Indeed, Allen "could not show that the[ State's] explanations were pretextual because no transcript of voir dire was available." *LeMon v. State*.[32]

We discern no error in the trial court's denial of Allen's *Batson* motion.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED JULY 15, 2009 ▮

*James W. Smith*, for appellant.

*Robert W. Lavender, District Attorney, Leon Jourolmon, Assistant District Attorney*, for appellee.

[29] *Snyder v. Louisiana*, 552 U. S. 472 (128 SC 1203, 170 LE2d 175) (2008).
[30] *Knuckles v. State*, 236 Ga. App. 449, 451 (1) (a) (512 SE2d 333) (1999).
[31] *George v. State*, 263 Ga. App. 541, 545 (2) (a) (588 SE2d 312) (2003).
[32] *LeMon v. State*, 290 Ga. App. 527, 530 (1) (660 SE2d 11) (2008).