## S01A1327. PATTERSON v. THE STATE.
### (559 SE2d 472)

BENHAM, Justice.

Because he had done some yard work for Gladys Windsor, Jerry Patterson was questioned about her murder. Based on Patterson's admission during that interview that he had gone to the mobile home park where the murder occurred after being warned to stay away, on

---

a statement by a maintenance man at the mobile home park that he was present when Patterson was given a criminal trespass warning, and on a police report memorializing that warning, a detective arrested Patterson for criminal trespass. The next day, another police officer explained Patterson's *Miranda* rights and attempted to question him. Although Patterson asked for counsel, the interview continued. The State has stipulated that the statements made by Patterson in that second interview are inadmissible pursuant to *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). On the following day, detectives initiated a third interview with Patterson, ostensibly to inform him he was being charged with murder, and explained his *Miranda* rights again. When Patterson invoked his right to counsel again, he was asked, "You don't want to hear what new stuff we got?" In the ensuing conversation, Patterson was told that since he had invoked his right to counsel, he could not be told what evidence existed against him, and was repeatedly asked whether he would talk to the officers without counsel. When Patterson exclaimed, "Come on and let me hear what you got to say," the response was to ask whether he wanted to talk without a lawyer. After one officer twice told Patterson he should have talked to them, Patterson agreed, saying, "Come on then." The officer responded by telling Patterson, "you'll have to talk to me later . . . if you want to talk to me, holler." One officer then accompanied Patterson to the door of the jail, required him to enter, and closed the door. Patterson immediately called the officer's name, in response to which he was released and returned to the interrogation room for what the State has called a fourth interview. The total time elapsed between the beginning of the third interview, which the State concedes is tainted by an *Edwards v. Arizona* violation, and the beginning of what the State calls the fourth interview, was 12 minutes. In that last interview, Patterson confessed to the killing. Indicted for murder, felony murder, armed robbery, and aggravated assault, he filed a motion to suppress his statements and tangible evidence seized in the case. The trial court denied the motion, but issued a certificate of immediate review. This Court granted Patterson's application for interlocutory appeal and posed the following question: "Whether the trial court erred by denying Patterson's motions to suppress his statements and tangible evidence."

1. "[O]nce an accused has 'expressed his desire to deal with the police only through counsel, (he) is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' [Cit.]" *Cook v. State*, 270 Ga. 820 (2) (514 SE2d 657) (1999). Patterson contends that his confession is inadmissible because it was the product of an interrogation

initiated by the State after he had requested counsel. The State concedes that any statements Patterson made immediately after being informed of the murder charge against him in the third interview were inadmissible for that reason, but asserts that the interrogation during which Patterson confessed was a separate interrogation initiated by Patterson. The trial court found that Patterson had initiated the final interview and that the confession was admissible.

A trial court's application of the law to undisputed facts is subject to de novo appellate review. *State v. Ray*, 272 Ga. 450 (2) (531 SE2d 705) (2000). The undisputed facts here are that the interrogating officers reacted to Patterson's repeated invocation of his right to counsel by attempting to persuade him to talk without counsel. However, when Patterson agreed to talk, they insisted on ending that interview, returning him to the jail long enough for the door to close behind him, letting him back out immediately when he asked, and beginning another interview in which he agreed to talk to them without counsel.

The undisputed facts set forth above lead us to conclude that there were not two interviews on that day, but only one. The termination of the third interview and the beginning of what the State insists was the fourth was no more than a pretense. Patterson had already agreed, as a result of the tactics employed in the third interview, to answer questions without counsel being present. The facts that the third interview, in which Patterson gave in to the pressure to waive his right to counsel, was conducted in violation of *Edwards v. Arizona*, supra; that the interrogating officers did not purport to end the third interview until Patterson agreed to talk without counsel; and that Patterson was not actually returned to his cell, but was only required to step past the jail door and then call for the officer who had accompanied him, persuades us that the so-called fourth interview was merely an extension of the third interview and was, therefore, tainted by the same violation of *Edwards v. Arizona* which the State concedes occurred in the third interview. Accordingly, we conclude that the confession was obtained in violation of *Edwards v. Arizona* and must be suppressed. The trial court's contrary conclusion was error.

2. Patterson also sought suppression of tangible evidence seized pursuant to a search warrant issued after his arrest for criminal trespass. His contention is that the search was tainted by an illegal arrest, and that the arrest was illegal because the offense was not committed in the officer's presence and the officer had not ascertained whether the victim of the criminal trespass, i.e., the person who warned Patterson to stay away from the mobile home park, wanted Patterson arrested.

A warrantless arrest is constitutionally valid if at the time of the

arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense, and probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense. *Johnson v. State*, 258 Ga. 506 (2) (371 SE2d 396) (1988). In the present case, the record shows that the arresting officer was told by Patterson himself that Patterson went to the mobile home park after he had been warned off the property, was told by an employee of the mobile home park that the manager had warned Patterson not to return, and found a police report memorializing the criminal trespass warning Patterson had been given. Those facts constituted probable cause to believe Patterson had committed criminal trespass. See *Holmes v. Achor Center*, 249 Ga. App. 184 (2) (a) (547 SE2d 332) (2001). Contrary to Patterson's argument, when the arresting officer obtained that information in Patterson's presence and outside Patterson's home, there was a sufficient exigent circumstance to justify a warrantless arrest. *Durden v. State*, 250 Ga. 325 (1) (297 SE2d 237) (1982). Accordingly, the trial court was correct in ruling the arrest legal and refusing to suppress the fruits of the subsequent search.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 4, 2002.

*Teddy R. Price*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Alvera A. Wheeler, Assistant District Attorneys*, for appellee.