## S03A0582. ROBLES v. THE STATE.
### (589 SE2d 566)

HINES, Justice.

Karla Angelica Robles appeals her convictions for felony murder and cruelty to a child in connection with the death of her son, Jovanny Fernandez, asserting numerous errors below.[1] For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that at 9:15 p.m., March 22, 2001, Robles dialed 911 to report that her two-year-old son, Jovanny Fernandez, had been burned in the bathtub. The 911 operator instructed her to put cool water on the burns, but Robles questioned this advice. About a minute and a half into the conversation, Robles admitted that the child was unconscious and was not breathing. Emergency personnel arrived on the scene at

---

[1] Jovanny Fernandez died on March 22, 2001. On January 9, 2002, a Clayton County grand jury indicted Robles for malice murder, felony murder in the commission of cruelty to a child, and two counts of cruelty to a child. Robles was tried before a jury on May 6-14, 2002, and was found guilty of felony murder and one count of cruelty to a child; the jury found her not guilty of malice murder and the remaining count of cruelty to a child. On May 20, 2002, she was sentenced to life in prison for felony murder, and twenty years in prison for cruelty to a child, to be served concurrently with the life term. Robles moved for a new trial on June 13, 2002, and amended that motion on July 29, 2002. The motion for new trial was denied on November 7, 2002. Robles's notice of appeal was filed on December 5, 2002, the appeal was docketed in this Court on December 27, 2002, and submitted for decision on February 17, 2003.

approximately 9:21 p.m. and found the front door to Robles's home partially open and Robles, the only adult in the home, speaking on the telephone in a normal voice. Jovanny's badly-burned body was at Robles's feet. The child was not breathing and had no pulse. Despite the body being scalded, it was cool to the touch. Jovanny had vomited. No intravenous line could be established because the child's veins had collapsed. Robles claimed that Jovanny had been scalded in the bathtub, and that she had put ointment on his burns. No ointment could be seen or smelled when the body was at the home, nor was there any sign of ointment on the body when it underwent an autopsy.

Jovanny had been scalded in hot water; hot water emerging from the bathtub spigot in Robles's home was 150 degrees Fahrenheit. The scalding was on the child's lower extremities and forearms. There were strict lines of demarcation across his lower torso and his forearms between the burned and non-burned areas, indicating that Jovanny had been in one position for at least several seconds and had not been "flailing" about at the time; he either had been in extremely hot water for several seconds, or water less hot for a longer period of time. The burned areas were a markedly different color from the non-burned areas, and would have been obvious immediately upon the child's leaving the water, as would the peeling of the burned skin. Fingernail scratches on Jovanny's back and head were apparently made contemporaneously with the burns. Jovanny died one to two hours after being burned from chemical changes to his body resulting from the scalding. Had he received proper, prompt medical attention, he would have survived.

Robles testified that the night of Jovanny's death: she turned on the bath water; while it was running, she placed a telephone call; ended the call to find Jovanny in the bathtub, moaning; he said he was "okay" and stood; he did not cry or scream; he drank milk, holding the cup in his hands; he asked to play with toys, then vomited; Jovanny then drank some Kool-Aid, again grasping the cup with his hands; she put ointment on his hands and legs, and he did not cry or scream; she telephoned a neighbor for assistance; she then telephoned a clinic, but got no answer; she then telephoned her aunt; she then telephoned 911.[2]

There was expert testimony that: the burns were not consistent with Jovanny falling into the bathtub; he could not have tolerated the temperature of 130 to 150 degrees Fahrenheit for more than an instant; his immediate reaction would be to attempt to get out of the

---

[2] Other evidence showed that a telephone call from Robles's home to her aunt's home was placed at 8:58 p.m., and that her aunt told her to call 911.

tub; he would not have been able to stand or to hold a cup with his burned hands; and ointment could not have been placed on the burns without the child screaming.

1. Robles challenges the sufficiency of the evidence, specifically arguing that the jury's verdicts are inconsistent in that she was found guilty of felony murder while in the commission of cruelty to a child by holding the child in scalding water, but found not guilty of cruelty to a child by holding Jovanny in scalding water.[3] But as these are not mutually exclusive verdicts, the finding of one does not necessarily preclude the other. Compare *Jackson v. State*, 276 Ga. 408, 409-413 (2) (577 SE2d 570) (2003). As to the inconsistent verdicts, in a case such as this, the not-guilty verdict "may be construed as an indication of leniency on the part of the jury even in the case of acquittal on the predicate felony and conviction on the compound felony." *Robinson v. State*, 257 Ga. 194, 195-196 (3) (357 SE2d 74) (1987).[4] Further, viewing the verdicts as inconsistent does not aid Robles: "since Georgia has rejected the inconsistent verdict rule, 'a defendant cannot attack as inconsistent a jury verdict of guilty on one count and not guilty on a different count.' [Cit.]" *Lawrence v. State*, 274 Ga. 794 (2) (560 SE2d 17) (2002). Even accepting that the verdicts are inconsistent, "[t]he only question is whether the evidence is sufficient to sustain a conviction for [the crimes of which Robles was convicted]." *Kolokouris v. State*, 271 Ga. 597, 598 (2) (523 SE2d 311) (1999).

Robles also contends that the State presented only circumstantial evidence that did not exclude all reasonable hypotheses except her guilt. See OCGA § 24-4-6.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998). There was ample evidence presented to authorize the jury to find Robles

---

[3] She was also found guilty of committing cruelty to a child by failing to provide medical attention for Jovanny's burns.

[4] *Robinson* dealt with facts similar to those presented here, and noted that the predicate felony would be set aside in any event in light of the conviction for felony murder. *Robinson*, supra. Thus, even if the jury had found Robles guilty of both counts of cruelty to a child the result would be the same with regard to sentencing; a sentence for felony murder and a sentence for one count of cruelty to a child.

guilty of committing felony murder by holding the child in scalding water, and guilty of committing cruelty to a child by failing to provide medical attention, and to reject the evidence and hypotheses Robles presented in an attempt to refute the charges. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Davis v. State*, 275 Ga. 633, 634-635 (570 SE2d 305) (2002).

2. Prior to voir dire, the presiding judge requested that the jury pool stand and recite the pledge of allegiance to the flag of the United States; all prospective jurors complied. Robles contends that this indicates that all jurors were "pro-State" and that the pledge was particularly harmful to her as she is not a citizen of the United States. First, Robles does not cite any authority for the proposition that a willingness to recite the pledge of allegiance shows a bias for the State in a criminal prosecution. Rather, we find that a juror's willingness to recite the pledge of allegiance, with its reinforcement of the concepts of "liberty and justice for all," shows no bias, either for the State, or for one who is charged by the State with a crime, and, in fact, is more likely to remind a juror of his or her obligations in the pursuit of justice. The record discloses that no prospective juror was required to recite the pledge of allegiance, and that the jurors took the oaths set forth in OCGA §§ 15-12-132 and 15-12-139. There was no error.

3. During voir dire, the trial court refused to allow Robles, who is Hispanic, to ask prospective jurors certain questions concerning their experiences with, and attitudes toward, Hispanics. Robles was permitted to ask whether any prospective jurors had any bias against her because she was Hispanic; no juror responded that they had such bias. Robles was then permitted to ask whether any prospective jurors worked, or had worked, with Hispanic co-workers. She was also permitted to ask if any prospective jurors considered themselves Hispanic or had a Hispanic spouse. The trial court did not permit questions concerning whether Hispanics lived in the neighborhoods of prospective jurors, attended school or church with them, or whether any prospective juror had a Hispanic friend. She was also prohibited from asking why the prospective jurors recited the pledge of allegiance and where they were born. Robles argued to the trial court that these questions would show whether any prospective juror had any bias against her because of her ethnicity or citizenship status,[5] and contends that prohibiting these questions violated her rights under the United States Constitution.[6]

---

[5] Robles asserts that she is a citizen of Mexico.

[6] Robles now argues that she had an absolute right to ask these questions under OCGA § 15-12-133. However, all she presented to the trial court was her constitutional argument concerning bias, and the statutory ground raised for the first time on appeal will not be con-

The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review.

*Speed v. State,* 270 Ga. 688, 691 (7) (512 SE2d 896) (1999). See also *Sallie v. State,* 276 Ga. 506, 510 (3) (578 SE2d 444) (2003). Considering the voir dire questions which Robles asked, and the answers she received, the trial court did not abuse its discretion in determining that the issue of bias had been sufficiently explored, and that further questions would be redundant. See *Fults v. State,* 274 Ga. 82, 85 (4) (548 SE2d 315) (2001).

4. Robles contends that the trial court improperly struck for cause four prospective jurors.[7] One juror was struck before Robles requested that voir dire be recorded, and there is nothing in the record to contradict the trial court's later statement that this prospective juror was struck because "her responses indicated that she could not be fair and impartial in deciding this case. . . ." Thus, we will presume that the trial court acted properly. *Gillespie v. Gillespie,* 259 Ga. 838 (388 SE2d 688) (1990).

As to the other three prospective jurors, whether to strike a potential juror for cause is a matter for the trial court's sound discretion. *Somchith v. State,* 272 Ga. 261, 262 (2) (527 SE2d 546) (2000). As the trial court's conclusion regarding bias is based in part on demeanor and credibility, which are peculiarly within the trial court's province, those findings are to be given deference. *Brady v. State,* 270 Ga. 574, 575 (2) (513 SE2d 199) (1999). No abuse of discretion is shown here: one prospective juror stated that she would not stand in judgment of another, despite the court's instructions; one testified that he did not believe the law was applied evenly, that he "would like to see everybody treated average balance," and that he would not be able to determine the relevant facts in the case from the evidence; and the remaining prospective juror said she could not stand in judgment of another due to her religious beliefs and would not look at any evidence concerning a burned child. Considering the answers given in voir dire, we do not find that the trial court abused

---

sidered. *Crawford v. State,* 267 Ga. 543, 545 (6) (480 SE2d 573) (1997).

[7] Each of the prospective jurors about whose exclusion Robles complains is African-American. Robles contends that these were the only African-American prospective jurors in the panels, but she made no attempt to place that information in the record, nor did she advance any argument below based upon the race of the prospective jurors.

its discretion in striking these prospective jurors for cause.

5. During the testimony of the pathologist who conducted the autopsy on Jovanny, Robles objected to the doctor testifying about the time that certain scratches on the body were made, and what the effects of immersion in hot water would be on a child. She contends that such testimony was only speculation, not based on scientific knowledge, and was within the ordinary knowledge of a juror. She similarly objected when a pediatrician testified as an expert as to whether a child could sit in water of 130 to 150 degrees Fahrenheit for any length of time, and about the potential effects on a child who had been burned in such water. The witnesses were properly qualified and accepted as experts, and the given testimony was beyond the ken of the average juror. OCGA § 24-9-67; see *State v. Butler*, 256 Ga. 448, 450 (2) (349 SE2d 684) (1986).

6. The pathologist also testified about the cause of death, using the words "[t]he problems that killed this child are. . . ." Robles moved for a mistrial, contending that this testimony went to the ultimate issue to be decided by the jury. The trial court properly denied the motion. Such expert testimony on the cause of death is proper. *Atkins v. State*, 274 Ga. 103, 106 (5) (549 SE2d 356) (2001); *Bethea v. State*, 251 Ga. 328, 331 (10) (304 SE2d 713) (1983).

7. Robles testified at trial, and a custodial statement she made to police was introduced in impeachment. She contends the trial court failed to conduct a *Jackson-Denno*[8] hearing before admitting the statement, but none was required as it was introduced for purposes of impeachment rather than in the State's case in chief. *Scott v. State*, 243 Ga. 233 (1) (253 SE2d 698) (1979). What is required is that the court make a determination as to the voluntariness of the statement. *Cook v. State*, 269 Ga. 460, 461 (3) (499 SE2d 887) (1998). When the statement was offered for impeachment, the trial court conducted a hearing outside the presence of the jury and determined that it was voluntary.[9] Robles does not argue that this finding was incorrect, and there is no error.

8. Robles contends that the court should have instructed the jury that a verdict of "not guilty" on Count 3 of the indictment, alleging cruelty to a child by submerging Jovanny in scalding water, would necessitate a verdict of "not guilty" of felony murder based on that crime. She did not request such a jury charge, but in any event, no such charge was warranted; that is simply not the law. Rather, as noted in Division 1, supra, "the inconsistent verdict rule has long been abolished in criminal cases." *Walker v. State*, 271 Ga. 328, 329

---

[8] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[9] The court specifically stated that it found the statement voluntary under the standard of *Jackson v. Denno*, supra.

(1) (519 SE2d 670) (1999).

9. Robles contends that the felony murder statute, OCGA § 16-5-1 (c), and the cruelty to children statute, OCGA § 16-5-70, are both unconstitutionally vague, facially and as applied to her. However, Robles did not advance any constitutional challenge to these statutes at trial, waiting until after her conviction to raise the matter in a motion to arrest judgment. Such challenges must be raised at the first opportunity, and certainly before the verdicts; Robles's failure to do so waives the issues on appeal. *Perez-Castillo v. State*, 275 Ga. 124, 125 (562 SE2d 184) (2002); *Hardeman v. State*, 272 Ga. 361, 362 (529 SE2d 368) (2000); *Kolokouris v. State*, supra.

10. In her motion to arrest judgment, Robles urged that the felony murder count (Count 2) of the indictment was defective. "[T]he trial court did not err in denying [her] motion in arrest of judgment unless the alleged defects in the indictment were so great as to cause the indictment to be absolutely void." *Drake v. State*, 245 Ga. 798, 804 (8) (267 SE2d 237) (1980), overruled on other grounds, *Harwell v. State*, 270 Ga. 765, 770 (2) (512 SE2d 892) (1999). The indictment is not void if it is sufficient to place the defendant on notice of the charges against her and enable her to prepare an intelligent defense. *Slakman v. State*, 272 Ga. 662, 669 (5) (533 SE2d 383) (2000).

To some extent, Robles repeats her argument concerning inconsistent verdicts. See Division 1, supra. She was convicted of cruelty to a child on Count 4, which alleged that she harmed Jovanny by failing to provide medical treatment, and acquitted on Count 3, which alleged that she committed cruelty to a child by submerging Jovanny in scalding water. The felony murder count, Count 2, on which she was also convicted, alleged that she committed felony murder while in the commission of the felony of cruelty to a child "by submerging [Jovanny] in scalding hot water." Robles contends this was insufficient because cruelty to a child can be committed in more than one manner under the statute. But that does not render the indictment void. See *Lowe v. State*, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003). The indictment sufficiently informed Robles of the crimes of which she was charged and which she would be required to defend against. *State v. Grant*, 274 Ga. 826, 827-828 (561 SE2d 94) (2002).

11. Finally, Robles contends that Count 4 of the indictment was defective. Again, this was not raised until her motion to arrest judgment, and the trial court properly denied the motion unless the indictment was void. See Division 10, supra. Count 4 of the indictment alleged that Robles committed the crime of cruelty to a child in that she maliciously caused Jovanny "excessive physical harm by failing to provide medical treatment for severe scalding burns, to the extent that his health was jeopardized." She contends that this was not sufficient to allege a violation of OCGA § 16-5-70 (b), which

states: "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." Robles bases this contention upon the argument that "excessive physical . . . pain" as set forth in the statute is different from "excessive physical harm" as set forth in the indictment. But this argument is unavailing. In the context of this statute, causing "physical . . . pain" and causing "physical harm" are so related that the indictment was sufficient to inform Robles of the charge and to allow her to prepare an intelligent defense. *Slakman*, supra.

*Judgments affirmed. All the Justices concur, except Fletcher, C. J., who concurs in the judgment and in all Divisions except Division 2, and Benham, J., who concurs in the judgment and in all Divisions except Divisions 2 and 3.*

DECIDED NOVEMBER 26, 2003.

*Johnny F. Castaneda, Michael B. King*, for appellant.

*Robert E. Keller, District Attorney, Kathryn O. Pulliam, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.