### A09A2082. CLARK v. THE STATE.
(690 SE2d 466)

PHIPPS, Judge.

Following a jury trial, Robert Clark was convicted of rape, aggravated assault, false imprisonment, and battery. He appeals his judgment of conviction pro se, contending that the special presentment brought against him by the grand jury was defective;[1] that the court erred in failing to quash the special presentment for a fatal variance between its allegations and the trial evidence; that the court erred in denying his motion to suppress evidence; that the court erred in questioning a trial witness; that the court erred in denying him funds to pay an expert witness; that the court erred in failing to rule on motions before trial; and that the court erred in excluding certain evidence at trial. Finding no merit in these contentions, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence showed that on October 2, 2003, the victim, J. C., who was Clark's former girlfriend, was in a restaurant parking lot when Clark arrived, grabbed her, forced her into his vehicle, and drove away. Clark took J. C. to a residential trailer, where he held her against her will for several days. During that time he raped her, punched her, stomped on her, pulled out some of her hair, stabbed her with a knife, and "wouldn't let [her] out of his sight for any reason." On October 5, law enforcement officers found Clark and J. C. in a crawlspace under the trailer. J. C. was bruised and bleeding, and had an injured eye and a puncture wound on her arm.

1. Clark makes two assertions concerning his challenge to the sufficiency of the special presentment against him, which he raised

---

[1] In his appellate briefs, Clark refers to the special presentment both as an indictment and an accusation. Under Georgia law, a special presentment is treated as an indictment. OCGA § 17-7-51; *Carmichael v. State*, 228 Ga. 834, 837 (2) (188 SE2d 495) (1972).

[2] *Smith v. State*, 296 Ga. App. 427 (674 SE2d 643) (2009).

in a motion in arrest of judgment that the court denied.

(a) Clark contends that the court denied him a hearing on this motion, thereby violating his due process rights. The record shows, however, that the court addressed this motion at a post-trial hearing and gave Clark the opportunity to argue the issue. We find no error.

(b) Clark also contends that the court erred in denying the motion because the special presentment against him was void.[3] But a special presentment is not void if it places a defendant on notice of the charges against him and enables him to prepare an intelligent defense.[4] The language of the special presentment alleged the elements of the charged offenses in the language of the Code sections under which Clark was convicted, thereby adequately informing Clark of the charges he faced and enabling him to prepare a defense to those charges.[5] The court did not err in denying the motion in arrest of judgment.[6]

2. Clark argues that there was a fatal variance between the allegations of the special presentment and the trial evidence.[7] He contends that the court thus erred in failing to quash the special presentment in response to his general demurrer, in which he had pointed out a date variance between the special presentment's allegation and a statement made by J. C. The special presentment alleged that Clark committed the offense of rape sometime between October 3 and October 5, 2003. J. C. testified, however, that Clark raped her on October 2, 2003. "[W]here the date alleged in the [special presentment] is not a material element of the offense, the [s]tate may prove the offense as of any date within the statute of limitation."[8] The date alleged in the special presentment was not a material element of the offense of rape,[9] and it fell within the applicable limitation period.[10] Although Clark contends that the difference in date unfairly surprised him at trial, he did not request a continuance from the court.[11] We find no error.

---

[3] See *Robles v. State*, 277 Ga. 415, 421 (10) (589 SE2d 566) (2003) (court errs in denying motion in arrest of judgment if defects rendered indictment absolutely void); *Bramblett v. State*, 239 Ga. 336, 338 (1) (236 SE2d 580) (1977) (challenge to sufficiency of substance of indictment can be made after trial through a motion in arrest of judgment).

[4] *Robles*, supra.

[5] See *State v. Grant*, 274 Ga. 826, 828 (561 SE2d 94) (2002); *Pitts v. State*, 260 Ga. App. 274, 276 (2) (581 SE2d 306) (2003).

[6] *Pitts*, supra.

[7] See *Quiroz v. State*, 291 Ga. App. 423, 425 (1) (662 SE2d 235) (2008) (fatal variance between indictment allegations and proof violates defendant's due process rights).

[8] *Bradford v. State*, 285 Ga. 1, 4 (3) (673 SE2d 201) (2009) (citation omitted); see *Carmichael*, supra.

[9] See *Heath v. State*, 269 Ga. App. 872 (1) (605 SE2d 427) (2004).

[10] See OCGA § 17-3-1 (b).

[11] Compare *Bradford*, supra.

3. Clark asserts that the court erred in denying his motion to suppress, as the "fruit of the poisonous tree," "anything that these officers did after they came on [his] property" including "the testimony of the alleged victim, the medical reports, everything [that] was taken after the illegal arrest," on the ground that the officers had neither an arrest warrant nor a search warrant.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[12]

Where mixed questions of fact and law are presented, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.[13]

Evidence at the suppression hearing showed that two law enforcement officers witnessed Clark and J. C. arguing by the side of a road on October 3, 2003. J. C. told the officers that Clark would not take her to work. The officers arranged for the occupants of a nearby residence to drive J. C. to work. Shortly thereafter, these persons placed a 911 call, reporting that Clark had dragged J. C. by her hair out of their vehicle and toward an abandoned trailer at a particular address. The two officers who previously had spoken with Clark and J. C. were dispatched in response to the call and interviewed witnesses to the reported incident. They went to the address but found no one at the trailer. The officers returned to the trailer a second time, but again found no one there. They interviewed a next-door neighbor, who reported having seen Clark at the trailer at various times of day following the incident.

The officers learned of an outstanding out-of-state warrant

---

[12] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) (citations, punctuation and emphasis omitted).

[13] *Thrasher v. State*, 292 Ga. App. 566, 569 (1) (666 SE2d 28) (2008).

against Clark.[14] At 2:00 in the morning on October 5, the officers returned to the trailer to locate Clark. The officers observed electrical cords running from inside the trailer to an access door leading under the trailer. The access door was ajar, and when the officers looked inside they saw under the trailer a mattress, a television set, soft drink bottles, and two human figures underneath a blanket. After the officers issued repeated verbal commands, Clark emerged from the space and was arrested. The officers then found J. C. in the space under the trailer.

Assuming, without deciding, that the crawlspace under the trailer was part of Clark's residence, we nevertheless find no merit in Clark's contention that the officers needed a warrant to look into that space under the circumstances presented in this appeal. Reasonable concern for a victim's welfare is an exigent circumstance that justifies a warrantless entry into a residence.[15] And a

> warrantless arrest is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense, and probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense.[16]

Here, the officers were told by eyewitnesses that Clark had forced J. C. out of a vehicle and dragged her toward a specific trailer; they learned through investigation that Clark had been seen at the trailer following the incident; they knew of an outstanding out-of-state arrest warrant for Clark; and while attempting to locate Clark at the trailer they observed evidence that electricity was being routed to a crawlspace underneath it. Based upon these facts, it was reasonable for the officers to believe that the exigent circumstance of protecting J. C.'s welfare existed, which justified their acts of pushing open the ajar access door and looking into the crawlspace.[17] And their observation of Clark and another person in the crawlspace, combined with the above facts, constituted probable cause to believe that Clark had

---

[14] The record does not indicate whether the out-of-state charge against Clark was for a crime punishable by death or imprisonment for a term exceeding one year, knowledge of which would have authorized the officers to arrest Clark pursuant to OCGA § 17-13-34.

[15] *Lindsey v. State*, 247 Ga. App. 166, 168 (1) (543 SE2d 117) (2000).

[16] *Patterson v. State*, 274 Ga. 713, 715-716 (2) (559 SE2d 472) (2002) (citation omitted); see OCGA § 17-4-20 (a); *Beck v. Ohio*, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142) (1964).

[17] See *Lindsey*, supra.

committed an offense, justifying their arrest of Clark.[18] The court did not err in denying Clark's motion to suppress.

4. Clark argues that the court improperly questioned J. C. at trial, thereby demonstrating a personal bias against Clark that required the trial judge's recusal.

> Though a judge is prohibited from expressing or intimating his [or her] opinion as to what has or has not been proved, the trial judge does have the right to propound a question or a series of questions to any witness for the purpose of developing fully the truth of the case. The extent to which the examination conducted by the court shall go is a matter within the court's discretion.[19]

The record shows that the court did not abuse its discretion in questioning J. C. The questions posed by the court related to when the rape occurred. The court did not, through these questions, express or intimate an opinion as to what had or had not been proved at the trial. Because the court's questioning of J. C. was not improper, it did not, as Clark contends, demonstrate a personal bias that would have required recusal. We find no error.

5. Clark argues that the court erred in denying his motion for funds to engage an expert to test blood samples.

> A motion for funds to obtain an expert witness requires a reasonable showing to the court, by the defendant, why the expert's services are required, what services are to be performed by such expert, the identity of the expert, and the cost to provide the needed services. The defendant must also demonstrate that without the assistance of the expert, the defendant's trial would be rendered fundamentally unfair. The trial court has discretion to grant or deny a motion for funds for an expert witness.[20]

Citing *Thornton v. State*,[21] Clark asserts that his trial was fundamentally unfair because "[t]he scientific evidence in issue was critical in that it was the sole link between [Clark] and the crime at issue,

---

[18] See *Patterson*, supra at 716; *Ledesma v. State*, 251 Ga. 487, 488-489 (3) (306 SE2d 629) (1983) (officers had probable cause to arrest based upon belief that arrest warrant had been issued in another state).

[19] *Eubanks v. State*, 240 Ga. 544, 546-547 (2) (242 SE2d 41) (1978) (citations omitted); see OCGA § 17-8-57.

[20] *Coalson v. State*, 251 Ga. App. 761, 766-767 (3) (555 SE2d 128) (2001) (citations and footnotes omitted).

[21] 255 Ga. 434 (339 SE2d 240) (1986).

and[,] because of its novelty, that evidence was subject to varying scientific opinions." But the record shows that the state did not present any evidence of blood samples or any other scientific evidence to link Clark to the crimes; instead, the state linked Clark to the crimes through the testimony of J. C., various eyewitnesses, and an arresting officer.[22] The court did not abuse its discretion in denying Clark's motion for funds for an expert witness.[23]

6. Clark argues that the court erred in beginning the trial without having ruled upon outstanding motions.[24] In support of this claim of error, however, Clark does not identify any specific motion shown in the record not to have been ruled upon. We find no merit in Clark's claim that the court failed to rule upon outstanding motions.

7. Clark argues that the court erred in excluding evidence that J. C. had a sexually transmitted disease but that Clark did not have the disease. Clark contends that, in so ruling, the court incorrectly applied the rape shield statute.[25] The record shows, however, that the court did not exclude any proffered evidence that J. C. had a sexually transmitted disease. Rather, the court allowed Clark's several attempts during trial to elicit testimony from J. C. that she had a sexually transmitted disease, which led to J. C.'s admission that she had been told that she had the disease. The court also allowed Clark to elicit testimony that the district attorney had considered having Clark tested for the disease. The court refused to admit into evidence an unsigned medical questionnaire produced by a county jail in response to a subpoena issued by Clark, which Clark asserted showed he did not have the disease. But the court excluded this evidence on the ground that Clark had failed to lay a proper foundation for the document's admission, and the record does not show that the court abused its discretion in so ruling.[26]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

---

[22] See generally *Williams v. State*, 284 Ga. 849, 852 (3) (672 SE2d 619) (2009) (rule set forth in *Thornton* and its progeny – that it is fundamentally unfair not to provide defendant with funds to hire expert where scientific evidence is "sole link" between defendant and crime – does not apply in case where scientific evidence was not "sole link").

[23] See *Coalson*, supra at 769.

[24] See *Birt v. State*, 127 Ga. App. 532, 534 (194 SE2d 335) (1972) (it is error to proceed to trial where demurrers or pleas remain for consideration).

[25] See OCGA § 24-2-3; see also *Warner v. State*, 277 Ga. App. 421, 424 (2) (626 SE2d 620) (2006) (defendant may introduce evidence that rape victim had sexually transmitted disease to exclude possibility that defendant had intercourse with victim).

[26] See *Massey v. State*, 269 Ga. App. 152, 154 (2) (603 SE2d 431) (2004) (decision whether to admit item into evidence is within trial court's discretion and will not be disturbed on appeal absent abuse of discretion).

DECIDED JANUARY 28, 2010 —

Robert L. Clark, *pro se.*
*Donald N. Wilson, District Attorney, Craig E. Miller, Assistant District Attorney*, for appellee.