**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 19, 2013

# In the Court of Appeals of Georgia

A13A1413. ASHMORE v. THE STATE.

MILLER, Judge.

Following a jury trial, Rodriguez Lamont Ashmore was convicted of aggravated sexual battery (OCGA § 16-6-22.2), three counts of child molestation (OCGA § 16-6-4 (a)), attempted child molestation (OCGA §§ 16-4-1 and 16-6-4 (a)), attempted aggravated child molestation (OCGA §§ 16-4-1 and 16-6-4 (c)), and statutory rape (OCGA § 16-6-3). Ashmore filed a motion for new trial and a motion in arrest of judgment, which the trial court denied. Ashmore appeals, contending that the trial court (1) applied an incorrect standard in ruling on the admissibility of a statement he made to police officers and (2) erred in denying his motion in arrest of judgment with regard to the attempted aggravated child molestation charge. We discern no error and affirm.

Viewed in the light most favorable to the jury's verdict,[1] the trial evidence shows that Ashmore was the boyfriend of the victim's Aunt Hometta, and the victim considered him to be her uncle. In June of 2010, the then 14-year-old victim spent the night in Hometta and Ashmore's home in Barrow County while she was in Georgia visiting her father and his family. This was the first time the victim had spent the night in the home. That night, Hometta, who was an on-call nurse, went to work around 11 p.m.

Ashmore and the victim dropped Hometta off at work, and on the return ride home, Ashmore started asking the victim adult-like questions about her boyfriend and whether they were having sex. Upon returning to the house, the victim went upstairs to Hometta and Ashmore's bedroom, which was across the hall from the room where Hometta's three children and Ashmore's daughter slept. The victim sat on the bed with Ashmore and they watched the news. At some point, the victim went into the connecting bathroom to wrap her hair. Ashmore followed the victim into the bathroom, turned off the light, put her on the counter near the sink and tried to grope her.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Ashmore went downstairs, and the victim returned to the bedroom. When Ashmore returned, the victim was lying down on the bed under the covers with a pillow covering her. Ashmore reached his hand underneath the pillow and put his hand inside the victim's shorts and underwear. Ashmore then fondled the victim's clitoris and put his finger inside her private area without her permission. Ashmore also asked the victim if he could play with or suck on her breasts.

The victim went downstairs to ask her Aunt Raven, who was staying at the home that night, if she could upload some music from the computer to her MP3 player, but she was afraid to tell Raven what had happened. After the victim got off the computer she returned to Hometta's room, and laid down on the bed on her stomach while listening to her MP3 player.

Sometime thereafter, Ashmore started rubbing the back of the victim's thigh close to her buttocks. Ashmore then rolled the victim over and moved her until her hips were hanging off the bed, removed her shorts, began to penetrate her vagina with his penis, and ejaculated on her stomach. The victim tried not to make too much noise because Ashmore had told her that someone would kill her if she said anything. Afterward, Ashmore asked the victim if she was thinking about her boyfriend while

3

he was penetrating her. The victim went to the bathroom to clean up, and when she returned to the bedroom, she and Ashmore went to sleep.

At approximately 5:00 to 6:00 a.m. the next morning, Ashmore woke up the victim, put her in the same position she was in the first time, and asked the victim if she "sucked - - which means oral sex." When the victim did not respond to his question, Ashmore again removed her shorts, had sex with her and ejaculated on her stomach. The victim never agreed to have sex with Ashmore nor gave him any indication that she was willing to do so.

Later that day, the victim told her stepmother that Ashmore had raped her. The victim's stepmother called the victim's dad, who came home from work and helped the victim bag up the clothes she had slept in the previous night. The victim then went to the police station with her dad and stepmother.

That night, the victim was examined by a sexual assault nurse, who took pictures and hair samples, collected evidence with a sexual assault kit, including vaginal and abdominal swabs, and gave the victim medicine. The exam revealed that the victim had bruising on her cervix that was consistent with vaginal penetration. Subsequent testing showed that the DNA found on the vaginal and abdominal swabs and other evidence contained in the sexual assault kit matched Ashmore's DNA.

At trial, the State also presented similar transaction evidence showing that in 2007, Ashmore had asked a 15-year-old girl, who often went to Ashmore and Hometta's house, to "come have sex with me' and "let me show you my dick." Ashmore later asked the 15-year-old girl to "let me show you my bedroom and my dick" while he was holding his private area. These incidents were subsequently reported to the police.

1. Ashmore contends that the trial court applied an incorrect standard in ruling on the admissibility of a statement he made to police officers. We do not agree.

"After a trial court makes the determination that a defendant's statement is freely and voluntarily given in compliance with *Jackson v. Denno*,[2] the trial court may properly allow the statement into evidence." (Citations omitted.) *Wright v. State*, 285 Ga. 428, 431-432 (2) (677 SE2d 82) (2009).

> The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.

(Citation omitted.) *Thomas v. State*, 292 Ga. 429, 433 (3) (738 SE2d 571) (2013).

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

Here, the record of Ashmore's *Jackson v. Denno* hearing shows that he gave a statement to police after the interviewing officer advised him of his *Miranda*[3] rights, and he voluntarily waived his rights in writing. Although Ashmore was in custody in the Barrow County jail on an unrelated charge at the time of the interview, he did not invoke his right to counsel, he was not threatened, and the interviewing officer did not promise him anything in exchange for his statement. Considering the totality of the circumstances, the trial court did not clearly err in admitting Ashmore's statement.[4] See *Thomas*, supra, 292 Ga. at 432-433 (3).

2. Ashmore contends that the trial court erred in denying his motion in arrest of judgment with regard to the attempted aggravated child molestation charge. We disagree.

> A motion in arrest of judgment is an appropriate remedy, [only] when an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law, and, upon the trial, no

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[4] Contrary to Ashmore's contention, the United States Supreme Court's decision in *Howes v. Fields*, __ U. S. __ (132 SCt 1181, 182 LE2d 17) (2012), does not require a different result because that case involved the questioning of an incarcerated defendant who was not given his *Miranda* warnings.

6

demurrer to the indictment is interposed and the accused is convicted under the indictment and judgment is entered on the verdict.

(Citation and punctuation omitted.) *Jones v. State*, 240 Ga. App. 484, 485 (2) (523 SE2d 73) (1999). "[An] indictment is not void if it is sufficient to place the defendant on notice of the charges against [him] and enable [him] to prepare an intelligent defense." (Citation omitted.) *Robles v. State*, 277 Ga. 415, 421 (10) (589 SE2d 566) (2003). "In attacking an indictment after the verdict, every presumption and inference is in favor of the verdict. By failing to file a demurrer before trial, [Ashmore] waived his right to a perfect indictment." (Citation and punctuation omitted.) *Bowman v. State*, 227 Ga. App. 598, 599 (1) (490 SE2d 163) (1997). Moreover, where an indictment alleges an offense, alleges that the act was unlawfully committed and contrary to the laws of the State, and employs language from which it must necessarily be inferred that criminal intent existed, the indictment is not void for failing to expressly allege the requisite criminal intent. Id. at 600-601 (1).

Here, the indictment charged Ashmore with attempted aggravated child molestation based on his act of asking the victim "if she sucked." The indictment

referred to OCGA §§ 16-4-1[5] and 16-6-4 (c),[6] and specifically alleged that the victim was under the age of sixteen, the act was unlawful and contrary to the laws of this State, Ashmore had the intent to commit the crime of aggravated child molestation and the act constituted a substantial step toward the commission of that crime. In the context of aggravated child molestation, the words "if she sucked" would alert a defendant that he was being charged with attempting to commit an immoral or indecent act involving an act of oral sodomy. See OCGA § 16-6-2 (a) (1). The indictment was sufficient to place Ashmore on notice of the charges against him and enable him to prepare an intelligent defense. See *Robles*, supra, 277 Ga. at 421 (10); *Clark v. State*, 302 Ga. App. 156, 157 (1) (b) (690 SE2d 466) (2010). Accordingly, the trial court did not err in denying Ashmore's motion in arrest of judgment.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

---

[5] "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1.

[6] "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c).