**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE:  Motions for reconsideration must be
physically received in our clerk′s office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules**

**June 18, 2026**

# In the Court of Appeals of Georgia

A26A0321. JONES v. STATE.

PADGETT, Judge

Shawn Llewellyn Jones, III was indicted and charged with two counts of homicide by vehicle in the first degree, driving under the influence (both per se and less safe), reckless driving, racing, speeding, and driving too fast for conditions stemming from an incident that occurred on September 14, 2016. The case was tried before a jury which was unable to reach a unanimous verdict on five counts of the indictment but found Jones guilty of racing ("Count 8"), speeding ("Count 10"), and driving too fast for conditions ("Count 12"). Prior to retrial on those counts for which the jury was unable to reach a verdict, the State moved to enter a nolle prosequi order on the five remaining counts of the indictment, which the trial court approved. The trial court then imposed sentence on the misdemeanor charges of

racing, speeding, and driving too fast for conditions. Jones filed a motion for new trial and a motion in arrest of judgment, both of which the trial court denied. This appeal followed.

Jones claims that the trial court erred in failing to grant his motion in arrest of judgment as to Count 12, and alternatively, that there was insufficient evidence to support the verdict on Count 12. He also claims a merger error relating to Counts 8, 10 and 12. For the reasons that follow, we affirm in part and reverse in part.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence." *Rodriguez v. State*, 375 Ga. App. 283, 283 (916 SE2d 10) (2025) (punctuation omitted). Viewed in that light, the record shows that Jones was at a bar in Atlanta when he and several friends decided to drive to another location. Jones had a passenger in his vehicle, and Jade Dibaje[1] had a passenger in her vehicle as they travelled to the second prearranged location. As the two vehicles drove down Peachtree Street, they raced one another between traffic lights. Dibaje testified that she and Jones were competing for speed between traffic lights, a process she referred

---

[1] Dibaje was also indicted but entered a guilty plea prior to trial.

to as playing "cat and mouse." As the two vehicles came to a curve in Peachtree Street, Dibaje slowed the vehicle she was driving but Jones did not. Jones lost control and collided into a stone retaining wall.

Jones was seriously injured and his passenger was killed in the collision. Law enforcement was called and conducted an extensive investigation of the collision. As a part of that investigation, officers obtained the airbag control module from Jones' vehicle which recorded data about the car, its operation and condition just prior to the airbag deployment. A review of the module revealed that five seconds before the collision, the speed of Jones' vehicle was 66 miles per hour, 71 miles per hour at 2.1 seconds before the collision and 58 miles per hour at .1 second before impact. Officers also obtained video surveillance footage from businesses and traffic cameras located along Peachtree Street which depicted the two vehicles as they traveled along Peachtree Street. The video confirmed Dibaje's testimony that the cars were essentially chasing one another as they drove along Peachtree Street. Through complex calculations that involved review of the video recordings and corresponding measurements of distance, officers determined that at times, Jones' vehicle was travelling 80.761 miles per hour on one particular section of the road and 72 miles per hour at another section, both of which were different locations from where the

collision occurred. The speed limit on Peachtree Street at all the sections of roadway for which the calculations were made is 35 miles per hour.

1. On appeal, Jones claims that the trial court erred when it denied his motion in arrest of judgment relating to Count 12. It is well settled that a motion in arrest of judgment, authorized under OCGA § 17-9-61, must be based upon an alleged defect in the indictment that the accused might otherwise have been authorized to challenge through a timely general demurrer. *Wiltfang v. State*, 378 Ga. App. 216, 221(2) (925 SE2d 218) (2026). "A motion in arrest of judgment can only be granted where there is a nonamendable defect on the face of the record, which consists of only the indictment, plea, verdict and judgment." *Smith v. State,* 257 Ga. App. 468, 470 (571 SE2d 446) (2002). Because we review rulings on a general demurrer de novo, we apply that same standard of review to the denial of a motion in arrest of judgment. See *Budhani v. State*, 306 Ga. 315, 319(1)(a) (830 SE2d 195) (2019). However, because the attack is made after the verdict has been rendered, every presumption and inference is in favor of the verdict. *Ashmore v. State*, 323 Ga. App. 329, 332(2) (746 SE2d 927) (2013).

"A motion to arrest judgment due to a defective indictment should be granted only where the indictment is absolutely void." *Pitts v. State*, 260 Ga. App. 274,

275(2) (581 SE2d 306) (2003). Generally, a challenge to the legal sufficiency of an indictment is raised via a general demurrer made prior to trial.[2] A defendant may raise a challenge to the legal sufficiency of the indictment after trial through a timely motion in arrest of judgment. *Wiltfang*, 378 Ga. App. at 218(1)(c).

Jones filed a timely motion in arrest of judgment relating to Count 12. He argues that Count 12 was deficient because it failed to include an allegation relating to the speed of Jones' vehicle.

OCGA § 40-6-180 provides,

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. Consistently with the foregoing, every person shall drive at a reasonable and prudent speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching and traversing a hill crest, when traveling upon any narrow or winding

---

[2] "There are a number of ways to challenge an indictment. Typically, a challenge is made by demurring to the indictment. 'A demurrer to an indictment may be general or special. A general demurrer challenges the very validity of the indictment and may be raised anytime; the special objects merely to its form or seeks more information and must be raised before pleading to the indictment.'" *Wiltfang*, 378 Ga. App. at 217(1)(b).

roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

Our Supreme Court previously rejected a claim that OCGA § 40-6-180 is unconstitutionally vague. See *Bilbrey v. State*, 254 Ga. 629, 631–32(1) (331 SE2d 551) (1985). In rejecting that vagueness claim, the Court held that OCGA § 40-6-180 meets constitutional muster only when read in conjunction with OCGA § 40-6-181. Id. at 631(1). The Court held that OCGA § 40-6-180, standing alone, does not meet "constitutional certainty requirements" but

> [w]hen read together, the code sections make it reasonably clear that when a vehicle encounters one of the listed road conditions or other hazards caused by weather or highway conditions, the law requires a reduction in speed below the maximum posted limit.

Id. "The law gives drivers of common intelligence notice that certain road and weather conditions will require a lowering of vehicle speed below the posted limit in order to protect public safety." Id. at 632(1). In *Woods v. State*, 361 Ga. App. 844 (864 SE2d 194) (2021), we followed the holding in *Bilbrey* and found that a charging instrument which charges a violation of OCGA § 40-6-180 but fails to allege or estimate the speed of the vehicle is subject to a general demurrer. *Woods*, 361 Ga. App. at 851(4)(a).

The two code sections must be read in conjunction with one another. OCGA § 40-6-181 prohibits driving a vehicle at a speed in excess of the posted speed limit "except when a special hazard exists that requires a lower speed for compliance with Code Section 40-6-180." OCGA § 40-6-181(a). OCGA § 40-6-180 prohibits driving a vehicle at a speed that is unsafe for the road or weather conditions that exist at the relevant point in time.

Count 12 of the indictment in Jones' case charged him with violating OCGA § 40-6-180 and alleged that Jones

> in the County of Fulton and State of Georgia, on the 14th day of September, 2016, did drive a vehicle on a public highway of this State at a speed greater than is reasonable and prudent when approaching and going around a curve contrary to the laws of said State ….

As we noted in *Woods*, because OCGA § 40-6-180 standing alone is insufficient to define a crime where the charging instrument fails to allege the speed of the vehicle in question, it is subject to a general demurrer. *Woods*, 361 Ga. App. at 851(4)(a). For the same reason here, the indictment failed to allege the speed of Jones' vehicle at the point in time he attempted to negotiate the curve and is subject to a motion in arrest of judgment.

The State alleges that this case is not controlled by the holdings in *Bilbrey* and *Woods*. The State urges us to find that because the indictment also charged Jones with speeding in Count 10, that the indictment did allege his speed, thereby satisfying the purported deficiencies in the count charging him with driving too fast for conditions.[3] See *Powell v. State,* 318 Ga. 875, 882(2) (901 SE2d 182) (2024) (indictment must be read as a whole and where one count does not include sufficient details, but those missing details are listed in another count of the indictment, the indictment survives a general demurrer). The State notes that the defendants in *Bilbrey* and *Woods* were not also charged with speeding, a factual difference that the State contends removes this case from the holdings in those two precedents. The State's argument is not persuasive because although Count 10 of the indictment did allege that his vehicle exceeded the posted limit on the date in question, that allegation referenced the speed of the vehicle at a different location and point in time than when he attempted to negotiate the curve. Had Count 12 of the indictment included an allegation of speed, at least as his speed related to the posted speed limit,

_____

[3] Count 10 of the indictment charged Jones for speeding in that he operated a vehicle at the speed of 80 miles per hour on a highway where the maximum speed limit was 35 miles per hour.

it could have passed constitutional muster. In the absence of such an allegation, we find that the holdings in *Bilbrey* and *Woods* control this case.

When evaluating a motion in arrest of judgment, the record consists only of the indictment, plea, verdict and judgment. *Smith,* 257 Ga. App. at 470. The legal analysis does not include an examination of the evidence produced at trial.[4] Although there are clear factual differences between this case and both *Bilbrey* and *Woods*, those factual distinctions do not demand a different outcome. The indictment was defective as to Count 12 and the trial court erred in denying Jones' motion in arrest of judgment.

2.     Based upon our holding above, Jones' remaining allegations are rendered moot as they relate to Count 12. However, Jones also alleges that Count 8 should merge with Count 10. We disagree.

Merger is a concept, rooted in substantive double jeopardy, which provides that a person may not be convicted and sentenced for multiple crimes based upon a

---

[4] Under the unique procedural posture of this case, we are aware of the speed of Jones' vehicle at the time he began to lose control of his vehicle prior to the collision, but those facts cannot be considered when analyzing a motion in arrest of judgment as the speed of Jones' vehicle was not alleged in Count 12 of the indictment.

singular course of conduct. *Nolley v. State*, 335 Ga. App. 539, 544–45(2) (782 SE2d 446) (2016). In Georgia, the doctrine of merger has been codified in OCGA § 16-1-7. Whether offenses merge is a legal question that we review de novo. *King v. State*, 377 Ga. App. 193, 196 (921 SE2d 797) (2025).

When performing a merger analysis, the first question which must be answered is whether the defendant's conduct was part of a single transaction. Whether there was a deliberate interval between the completion of one offense and the commission of a separate offense determines whether it can be said that the two alleged offenses were part of the "same conduct" as defined in OCGA § 16-1-7. See *Price v. State*, 313 Ga. 578, 581 (872 SE2d 275) (2022); *Mitchell v. State*, 367 Ga. App. 841, 842(2) (887 SE2d 530) (2023).[5]

If it is determined that the two alleged offenses were part of a single continuous act, the familiar "required evidence" test must then be applied to determine whether the offenses merge. *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006).

---

[5] The legislature can provide that certain violations do not merge as expressed within the statutory language they choose to employ. See OCGA §§ 40-6-391(l) and 16-15-4(m). However, no such situation exists in this case.

> [T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Id. (punctuation omitted). Under this framework, we find that Count 8 and Count 10 do not merge.

a. The evidence presented at trial showed that investigating officers conducted an extensive investigation which included securing video images captured by surveillance cameras located along that portion of Peachtree Street where the two vehicles travelled. Those video images included time stamps and depicted the two vehicles racing one another and stopping for one or more traffic signals. The investigation also resulted in the officers securing the airbag control module from Jones' vehicle. A review of the module revealed that at the time of the collision, Jones was operating his vehicle at a speed in excess of the posted speed limit. At an entirely different section of the roadway, the evidence showed that the two vehicles were racing between traffic signals. Therefore, there was a deliberate interval between the act of racing and a separately identifiable act of speeding. "When conducting this analysis, that the interval is merely minutes or even seconds cannot be a solely determinative factor." *King*, 377 Ga. App. at 197 (punctuation omitted).

11

The evidence showed that the two vehicles were racing one another and stopped racing for the duration of traffic signals at several different spots along the roadway. The evidence also showed that Jones' vehicle was speeding at the time of impact which was documented as being separated by several minutes and a significant distance from independent acts of racing.[6] We find that there was a deliberate interval between acts that constituted racing and those which constituted speeding. Therefore, the two offenses depicted in Count 8 and Count 10 of the indictment are not a part of the same transaction, rendering the doctrine of merger inapplicable. See *Wilkey v. State*, 368 Ga. App. 238, 241(2) (889 SE2d 427) (2023) (Georgia law is clear "when one crime is completed before the other begins, there is no merger") (punctuation omitted).

---

[6] Although the evidence also showed that Jones was speeding while simultaneously racing, there was a separately identifiable act of speeding as depicted by the vehicle's module which established sufficient proof of the act of speeding separate from the evidence of racing. Similarly, the evidence also showed that the vehicles stopped racing for the duration of several traffic signals along the roadway.

b. Additionally, under the required evidence test, the offenses of racing and speeding each have independent elements that are required to prove the two offenses and, as a result, racing and speeding do not merge.[7]

OCGA § 40-6-186 prohibits racing on highways and streets. The statute defines the term "racing", as relevant here, as "the use of one or more vehicles in an attempt to outgain, outdistance, … [or] to arrive at a given destination ahead of another vehicle or vehicles …." OCGA § 40-6-186(a)(2). The statute then provides that,

> No person shall drive any vehicle on a highway in this state in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration, or for the purpose of making a speed record, and no person shall in any manner participate in any such race, competition of speed, contest of speed, or test or exhibition of speed.

OCGA § 40-6-186(b).

---

[7] The parties have not identified and we cannot independently locate any precedent which addresses whether the offenses of racing and speeding generally merge. Therefore, we take this opportunity to address this issue despite our finding that the offenses are not a part of a single transaction, rendering merger inapplicable.

OCGA § 40-6-181 prohibits drivers from operating a vehicle at a speed that is in excess of 30 miles per hour in any urban district unless otherwise designated by appropriate signs. It is undisputed that the posted speed limit at the location where the collision occurred was 35 miles per hour.

Therefore, the offense of racing requires proof of a speed contest while speeding requires only proof that the vehicle in question exceeded the posted speed limit. A driver can be speeding without being engaged in any sort of speed contest. A driver can be racing without regard to the posted speed limit. Racing requires proof of an element (engaging in a speed contest) that is not necessary to prove speeding and speeding requires proof of an element (exceeding the posted speed limit) that racing does not. All of the elements in one charge are not required to prove the second charge. See *Carter v. State*, 249 Ga. App. 354, 358(8) (548 SE2d 102) (2001). Therefore, even under the required evidence test, Count 8 and Count 10 do not merge and the trial court did not err in so ruling.

*Judgment affirmed in part and reversed in part. McFadden, P. J., and Watkins, J., concur.*