**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: April 19, 2022

S22A0079. PRICE v. THE STATE.

PETERSON, Justice.

Robert Lewis Price III was convicted of malice murder and other offenses in connection with the shooting death of Ronnie Cantrell, Sr. ("Cantrell"), and the non-fatal shooting of Ronnie Cantrell, Jr. ("Cantrell Junior").[1] On appeal, Price raises one claim

---

[1] The crimes occurred on September 11, 2012. On March 26, 2015, a Henry County grand jury indicted Price and three other co-defendants — Trey Michael Cota, Terrance Leslie Floyd III, and Brandon Alexander Terry-Hall — for malice murder and felony murder of Cantrell (Counts 1-6), burglary (Count 7), armed robbery of the Cantrells (Counts 8 and 9), aggravated assault of Cantrell (Count 10), aggravated assault of Cantrell Junior (Count 11), aggravated battery of Cantrell Junior (Count 12), false imprisonment of the Cantrells (Counts 13 and 14), and possession of a firearm during the commission of a felony (Count 15). The State gave notice of its intent to seek the death penalty but withdrew its notice when Price waived his right to a jury trial. Floyd and Cota pleaded guilty to Counts 7 and 9, and both men testified at Price's bench trial. Terry-Hall pleaded guilty to felony murder and other offenses, and we affirmed the denial of his motion for an out-of-time appeal. See *Terry-Hall v. State*, 312 Ga. 250 (862 SE2d 110) (2021).

At Price's June 2016 bench trial, he was found guilty on all counts, and the trial court sentenced him to life in prison plus 75 years. Price filed a timely

of error: the trial court erred by failing to merge his convictions for aggravated assault and aggravated battery committed against Cantrell Junior because the underlying acts occurred in quick succession and arose out of the same transaction. Although there is some evidence to support Price's argument, there is also evidence to support the trial court's factual finding that the acts were separated by sufficient time to constitute a deliberate interval. The existence of a deliberate interval dooms Price's argument. We affirm.

The trial evidence shows that Cantrell and his adult son, Cantrell Junior, were together for most of the day on September 11, 2012, and returned to Cantrell's residence after dinner. Upon entering the house, Cantrell Junior became alarmed by the smell of cigarette smoke and the sight of cigarette butts on the floor, because

---

motion for new trial, which he later amended. On October 22, 2019, the trial court denied Price's motion, except to the extent that the court corrected certain alleged sentencing errors. The revised disposition shows that Price was sentenced to serve life in prison for Counts 1, 8, and 9; a 20-year term for Count 7; a 20-year term for Count 11 consecutive to Count 1; a 20-year term consecutive to Count 11 for Count 12; a 10-year term consecutive to Count 12 for Count 13; a 10-year term for Count 14; and a five-year term consecutive to Count 13 for Count 15. The remaining counts were vacated or merged. Price filed a timely notice of appeal and his case was docketed to this Court's term beginning in December 2021.

neither he nor his father smoked. Cantrell Junior also saw items strewn about the house and told his father that he believed someone had been in the house. They exited the house briefly but went back inside after Cantrell Junior retrieved his gun from his truck. The Cantrells walked through the house and stopped at Cantrell's master bedroom. The men were looking inside the bedroom when Brandon Alexander Terry-Hall, wearing a mask, jumped out and began shooting. Cantrell Junior returned fire and struck Terry-Hall, who crawled into the master bathroom and closed the door.

The Cantrells remained in the hallway for a moment before Price, also wearing a mask, exited a bathroom at the end of the hallway. Price pointed a shotgun at the Cantrells and fired. The shotgun pellets struck Cantrell Junior in the hand, blowing off a finger, and hit Cantrell in the side, causing him to fall. After the initial shot, Cantrell Junior turned around, picked up his father, propped him up against the wall, and told him that they were getting out of the house. When Cantrell Junior turned around to walk down the hall, Price ran down the hallway and shot Cantrell

Junior in the chest, causing extensive bleeding, before returning to the bathroom from which he had appeared. Cantrell Junior continued to try to carry his father out of the house and was at the kitchen door when Price ran from behind, grabbed Cantrell, demanded access to a safe Price had discovered, and threatened to shoot Cantrell in the head if Price was not given access. Cantrell Junior agreed to open the safe and led Price to it with the shotgun pointed to his head. After opening the safe, Cantrell Junior asked Price to let him and his father go outside to die in peace. Price let the Cantrells leave the house, whereupon they called 911 and walked across the street. The Cantrells were transported to a hospital, where Cantrell died from multi-system organ failure caused by the shotgun wound to his torso.

Price testified in his own defense and admitted participating in the burglary of Cantrell's house and shooting both Cantrells. Price claimed that he shot in the direction of the Cantrells because he wanted to stop them from shooting Terry-Hall; he claimed he stopped shooting when he noticed that the Cantrells were not

returning fire. Price testified that when he did so and after Cantrell Junior asked to take Cantrell outside, Price stepped aside and went into the bathroom. Price went to look for Terry-Hall, could not find him, and became angry when Price saw a trail of blood leading out of the window and realized Terry-Hall had been shot. Price then pursued the Cantrells, pointed a gun at them, and demanded access to the safe. Price claimed that he found no money in the safe and did not take anything from it. He fled into the woods when he heard sirens and reunited with the other co-defendants later.

Among other offenses, Price was convicted of the malice murder of Cantrell and aggravated assault and aggravated battery against Cantrell Junior. His sentence included separate 20-year terms for aggravated assault and aggravated battery. The aggravated assault conviction was based on shooting Cantrell Junior with a gun, and the aggravated battery conviction was based on depriving Cantrell Junior of his finger when he was shot. In his motion for new trial, Price argued to the trial court that the two offenses should have merged for sentencing purposes because they

were "inflicted in quick succession" and "arose out of the same criminal transaction." In its order denying the motion for new trial, the trial court found that the two offenses did not merge because they "derive[d] from two gunshots that did not occur almost immediately one after the other," but were separated by a period of time and resulted in distinct injuries.

In his sole claim of error, Price argues that the trial court erred in failing to merge his convictions for aggravated battery and aggravated assault. He contends that the shot that deprived Cantrell Junior of his finger occurred "mere minutes" before the second shot to Cantrell Junior's chest and was part of the same shootout. We conclude that the trial court did not err in failing to merge these counts.

In order for the aggravated assault and aggravated battery counts to be treated as distinct criminal acts, there must be a "deliberate interval" between the completion of one offense and the start of the other. See *Regent v. State*, 299 Ga. 172, 174 (787 SE2d 217) (2016). If there was no deliberate interval, then the two offenses

6

were part of a continuous act and merge for sentencing purposes. See *Russell v. State*, 309 Ga. 772, 784 (4) (a) (848 SE2d 404) (2020); *Ingram v. State*, 279 Ga. 132, 133-134 (2) (610 SE2d 21) (2005).

We have said that "whether offenses merge is a legal question" that we review de novo. *Regent*, 299 Ga. at 174. That is particularly true when considering whether counts merge as a matter of law, but counts also may merge as a matter of fact. See *Grissom v. State*, 296 Ga. 406, 409 (1) (768 SE2d 494) (2015). Whether there is a "deliberate interval" between two offenses requires a review of the trial evidence, and we have not determined squarely the manner in which we are to view that evidence or resolve conflicts in the evidence. In a few cases, without explaining why, we appear to have construed the evidence in the light most favorable to support the jury's verdicts. See, e.g., *Ortiz v. State*, 291 Ga. 3, 6 (3) (727 SE2d 103) (2012) (in considering merger question, concluding that the evidence, "[c]onstrued to support the verdicts," "dictate[d] the finding of two distinct assaults" were separated by a "deliberate interval"); *Parker v. State*, 281 Ga. 490, 492 (2) (640 SE2d 44) (2007)

("The jury could have reasonably concluded that the first two injuries resulted from a separate offense than the third."). But it is not for the jury to resolve merger questions, as the jury's role is to determine whether a defendant is guilty (or not) of each charged offense and the trial court's role to convict and sentence a defendant after a finding of guilt only for those counts that are not merged or vacated. See *Dukes v. State*, 311 Ga. 561, 571 (4) (858 SE2d 510) (2021) ("Merger refers generally to situations in which a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law, can be punished — convicted and sentenced for only one of those crimes." (citation and punctuation omitted)); *State v. Riggs*, 301 Ga. 63, 68-69 (2) (a) (799 SE2d 770) (2017) (discussing trial court's discretion to sentence a defendant within the statutory range for each count of conviction). And absent a special verdict form that asked the jury to determine whether a deliberate interval existed, nothing in the jury's verdict implicitly or explicitly answered that question.

Here, the trial court — after a bench trial — found that a deliberate interval separated the two crimes at issue. We have not identified a case in which we have considered the proper scope of review as to a trial court's factual determinations regarding merger. But typically, a trial court's factual findings are reviewed for clear error, meaning we accept the court's factual findings if there is any evidence to support them. See, e.g., *Maxwell v. State*, 311 Ga. 673, 676 (2) (859 SE2d 58) (2021) (in reviewing grant or denial of double jeopardy plea in bar, the trial court's findings regarding disputed facts are reviewed for clear error); *Cox v. State*, 306 Ga. 736, 745 (3) (b) (832 SE2d 354) (2019) (when reviewing ruling on a motion to suppress a defendant's statement, we defer to the trial court's findings on disputed facts and will not upset them unless they are clearly erroneous); *Green v. State*, 302 Ga. 816, 818 (2) (809 SE2d 738) (2018) (providing same for review of ineffective assistance of counsel claims); *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) (defining clear error). We need not resolve whether, in considering a factual merger question like the one at issue here, we

are to defer to the trial court's factual findings on the issue or view the evidence in the light favorable to the guilty verdicts, because the trial court sat as the fact-finder at Price's bench trial and when evaluating Price's merger claim, and applying either of the applicable standards of review would net the same result.[2]

The aggravated battery and aggravated assault counts, although involving Price's use of a deadly weapon, did not clearly charge the same conduct, and Cantrell Junior's testimony provides evidence that there was a deliberate interval between the critical shots. According to Cantrell Junior, Price fired a shot that blew off his finger and then struck Cantrell, causing Cantrell to fall. It was only after Cantrell Junior began attending to his father that Price shot Cantrell Junior in the chest, resulting in additional injury.

---

[2] We have said that when a trial court sits as the trier of facts, its "findings based on conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them." *State v. Rosenbaum*, 305 Ga. 442, 449 (2) (826 SE2d 18) (2019); see also *Clark v. State*, 309 Ga. 473, 477 (847 SE2d 364) (2020) (on sufficiency review, the verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case").

Cantrell Junior did not describe the amount of time that lapsed between the first and second shot, but his testimony reveals that he bent down to pick up his father, propped him against the wall, and turned around to begin walking when Price ran down the hall and fired the second shot.

Because the evidence shows a pause sufficient to constitute a deliberate interval, the trial court was thus permitted to conclude that the aggravated battery was completed before the aggravated assault took place. See *Hightower v. State*, 304 Ga. 755, 760 (3) (822 SE2d 273) (2018) (aggravated assault and aggravated battery counts involving same victim did not merge because they "did not clearly charge the same conduct" and the evidence showed that there were two rounds of shots separated by a deliberate interval and resulted in different injuries); *Oliphant v. State*, 295 Ga. 597, 602 (4) (b) (759 SE2d 821) (2014) (aggravated assault counts did not merge into other convictions, including armed robbery of aggravated assault victim, where after the initial shooting, one assailant returned and shot the victim in the leg); *Lowe v. State*, 267 Ga. 410,

11

412 (1) (b) (478 SE2d 762) (1996) (aggravated assault count did not merge into malice murder count because the aggravated assault was completed and defendant walked around the car and deliberately aimed at the wounded and pleading victim before firing the fatal shot). Compare *Wofford v. State*, 305 Ga. 694, 696 (1) (b) (827 SE2d 652) (2019) (trial court erred in failing to merge aggravated assault and aggravated battery counts because they were based on a single gunshot that struck the victim in the head); *Douglas v. State*, 303 Ga. 178, 183 (4) (811 SE2d 337) (2018) (aggravated battery and aggravated assault counts should have merged because the "injuries were sustained by one victim during a single, *uninterrupted* criminal act" (emphasis added)). The evidence was sufficient to support the trial court's factual finding of a deliberate interval, and thus we affirm the court's legal determination that merger was inappropriate.

*Judgment affirmed. All the Justices concur.*