**FIRST DIVISION
BARNES, P. J.,
DOYLE, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 20, 2023**

# In the Court of Appeals of Georgia

A23A0431. WILKEY v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Gregory Eugene Wilkey was convicted of family violence aggravated assault, family violence aggravated battery, false imprisonment, and family violence battery.[1] He appeals from the denial of his motion for new trial, arguing that there was insufficient evidence to support his conviction for false imprisonment, that his family violence aggravated assault conviction should have merged with his family violence aggravated battery conviction for sentencing purposes, that the trial court erred by not allowing the admission of his entire

---

[1] See OCGA §§ 16-5-21 (a) (2), (j) (2013); 16-5-24 (a), (h) (2013); 16-5-41 (a); 16-5-23.1 (a), (f) (2013).

statement to police under the rule of completeness, and that he received ineffective assistance of counsel. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict,[2] the record shows that Wilkey met the victim in October 2012 and that the couple was married in February 2013. On the morning of April 4, 2013, Wilkey asked his wife for money to buy a spare tire so he could drive to work. She told Wilkey that she did not have any cash, and during their conversation she noticed that Wilkey was acting very agitated. Thus, she locked herself in the bathroom and called 911. Officers from the Cartersville Police Department responded to the house and told the parties to get some rest; when they left, the victim was lying down in the bedroom and Wilkey was on the couch in the living room.

Immediately after the officers left, Wilkey went into the bedroom, told his wife the police had left, grabbed her phone, and hit her in the face with his fist. The victim rolled over and felt Wilkey choking her. She managed to get up and run toward the door, but Wilkey hit her again in the face, knocking her back onto the bed. He then tied her hands with a string and hit her again. The victim begged Wilkey to stop, telling him that she could not breathe and that she needed her inhaler, which was in

---

[2] See *Smith v. State*, 289 Ga. App. 236, 237 (656 SE2d 574) (2008).

2

her car. Wilkey untied his wife's hands, held her arm as he led her to the living room and sat her down on the couch, but said she could not leave because he knew she would "make a scene" as soon as she went outside.

Eventually the victim convinced Wilkey to let her go to her car. He held her arm until she got into the passenger seat, then pulled down the sun visor, opened the mirror, and told her to clean up her face. As Wilkey walked around to the driver's side, the victim jumped out of the car and ran into a building, where employees called 911.

The same officers who had responded to the victim's earlier call also responded to the second call. The victim told them Wilkey had attacked her. She had a broken nose, bruising on her jaw, neck, chest, arms, and wrists, and needed stitches near her eye.

Officers put out a "Be On The Lookout" for Wilkey and his vehicle, and deputies with the county police department located his vehicle at a nearby home. When an officer from the city police department arrived at the home, he walked in the house with the deputies. Wilkey was inside the residence talking on the phone, and after an officer told him to hang up, Wilkey said to the person on the phone, "I'm

fixing to go to jail." Police then asked Wilkey what happened after they left his home that morning, and he denied any knowledge of his wife's injuries.

Wilkey was charged with family violence aggravated assault, family violence aggravated battery, false imprisonment, and family violence battery. The jury found Wilkey guilty on all counts, and the trial court imposed a recidivist sentence of 30 years with 20 to serve in confinement. Wilkey filed a motion for new trial, which the trial court denied. He then filed this appeal.

1. Wilkey argues, first, that there was insufficient evidence to support his conviction for false imprisonment. He acknowledges the victim testified that Wilkey tied her hands, but contends that this evidence was insufficient to support a conviction because there was no physical evidence, such as marks or injuries on her wrists, and because her testimony at trial differed from the account she gave at the hospital immediately after the incident.

> When we consider the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and inquire only whether any rational trier of fact might find beyond a reasonable doubt that the defendant is guilty of the crimes of which he was convicted. Under this review, we must put aside any questions about conflicting

4

evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact.[3]

"Accordingly, the jury's verdict will be upheld as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4]

Under OCGA § 16-5-41 (a), false imprisonment occurs when a person, "in violation of the personal liberty of another, . . . arrests, confines, or detains such person without legal authority." "Whether [a] detention amounted to false imprisonment [is] for the jury to decide[,]" and even a brief detention can be sufficient.[5]

In this case, there was clearly sufficient evidence to support a conviction for false imprisonment. The victim testified that Wilkey tied her hands and kept her in the bedroom, and that he subsequently prevented her from leaving the living room. In light of this testimony, the jury was authorized to find Wilkey guilty of false

---

[3] (Citations and punctuation omitted.) *Jones v. State*, 354 Ga. App. 568, 571 (1) (841 SE2d 112) (2020).

[4] (Citation and punctuation omitted.) *Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

[5] *Rehberger v. State*, 235 Ga. App. 827, 828 (1) (510 SE2d 594) (1998).

imprisonment beyond a reasonable doubt.[6] Additionally, to the extent the victim's testimony at trial may have differed from how she previously described the incident, any "conflicts between the victim's testimony at trial and the victim's out-of-court statements were for the jury to resolve."[7]

2. Wilkey argues that the trial court erred in failing to merge his convictions for family violence aggravated assault and family violence aggravated battery. We discern no error.

"Whether offenses merge is a legal question, which [the appellate court] review[s] de novo."[8] To determine whether multiple convictions merge for purposes of sentencing, we must apply the "required evidence" test and determine "whether

---

[6] See *Pierce v. State*, 301 Ga. App. 167, 169 (1) (c) (687 SE2d 185) (2009) (sufficient evidence of false imprisonment where the defendant grabbed the victim by her hair and dragged her from room to room and victim testified that she wanted to get away but was unable to escape from the defendant); *Rehberger*, 235 Ga. App. at 827-828 (1) (sufficient evidence of false imprisonment where the defendant briefly held the victim against her will).

[7] (Citation and punctuation omitted.)*Westbrooks*, 309 Ga. App. at 400-401 (1).

[8] (Citation and punctuation omitted.) *Regent v. State*, 299 Ga. 172, 174 (787 SE2d 217) (2016).

each provision requires proof of a fact which the other does not."[9] Further, our law is clear that "when one crime is completed before the other begins, there is no merger."[10]

Applying these principles, the Supreme Court of Georgia has held that "[i]n order for [a defendant's] aggravated assault and aggravated battery counts to be treated as distinct criminal acts, there must be a 'deliberate interval' between the completion of one offense and the start of the other."[11]

Here, Wilkey was charged with family violence aggravated battery for making "an assault upon the [victim] with [his] hands and fists . . . , objects which when used offensively against a person are likely to result in serious bodily injury, by repeatedly striking [the victim] about the face with the hands of said accused, resulting in bruising, a laceration and a broken facial bone[.]" He was charged with family violence aggravated battery for intentionally causing "bodily harm to [the victim] by

---

[9] (Citations and punctuation omitted.) *Smith v. State*, 354 Ga. App. 882, 888 (3) (842 SE2d 305) (2020).

[10] (Citations and punctation omitted.) Id.

[11] *Price v. State*, 313 Ga. 578, 581 (872 SE2d 275) (2022).

seriously disfiguring said person's face, a member of said person's body, by repeatedly striking said person about her face resulting in a laceration and a broken facial bone[.]"

At trial, the State presented evidence that Wilkey struck the victim's face or head on more than one distinct occasion during the attack. Specifically, the victim testified that Wilkey struck her first while she was lying in bed and again after she escaped from his grasp and ran toward the door. Thus, "the evidence shows a pause sufficient to constitute a deliberate interval," and there is no merger.[12]

3. Wilkey contends that the trial court erred under the rule of completeness by excluding his answers to police questioning — in which he stated that he left the house right after the officers did and that he did not know anything about the victim's injuries — while admitting the statement he made over the phone — in which he said that he would be going to jail.

---

[12] *Price*, 313 Ga. at 582. See *Santoro v. State*, 361 Ga. App. 546, 550-551 (3) (864 SE2d 719) (2021) (no merger where defendant choked victim, the two got out of bed, a struggle ensued, and defendant then physically attacked her); *Crider v. State*, 356 Ga. App. 36, 49-50 (3) (846 SE2d 205) (2020) (no merger where defendant pointed a gun at the victim, the two talked, the defendant followed the victim around, and then shot the victim in the stomach).

The rule of completeness provides, generally, that where part of a conversation is admitted into evidence, "it is the right of the accused to bring out other portions of the same conversation[.]"[13] The appellate court reviews the trial court's ruling on this issue for abuse of discretion.[14]

The trial court issued its ruling on this issue during a bench conference at the start of the trial, when the State made an oral motion in limine. As context for its motion, the State explained that Wilkey was on his phone when officers found him at a relative's house, and they overheard Wilkey say, "I'm fixing to go to jail," before he hung up the call. When officers subsequently questioned Wilkey, he said that he left his house right after the officers left that morning and that he did not know anything about his wife's injuries.

In its motion in limine, the State argued that Wilkey should not be permitted to introduce his response to the officers' questioning as evidence at trial because his statement was hearsay. Wilkey contended that the statement was admissible as a

---

[13] (Citation and punctuation omitted.) *Allaben v. State*, 299 Ga. 253, 256 (2) (787 SE2d 711) (2016).

[14] Id.

present sense impression or excited utterance, but the trial court rejected those arguments and ruled that the statement could not be presented as evidence.

Wilkey then asked the court to exclude the State from introducing the statement he said on the phone — "I'm fixing to go to jail" — but the State contended that this statement was admissible as a party admission. The State further argued that the statements were made in different conversations, one over the phone to an unidentified individual and one in-person to officers, so the rule of completeness would not apply. The trial court agreed with the State, and an officer testified before the jury that he overheard Wilkey tell the person on the phone, "I'm fixing to go to jail."

The trial court did not abuse its discretion in ruling on this issue. The rule of completeness does not apply to separate and distinct statements,[15] and the record reveals that Wilkey said "I'm fixing to go to jail" in one conversation and said that

---

[15] See *Danley v. State*, 342 Ga. App. 61, 64 (3) (a) (802 SE2d 850) (2017) (although two 911 calls made by victim's husband were admitted into evidence, rule of completeness did not require admission of return call from sheriff's department), overruled in part on other grounds by *McClure v. State*, 306 Ga. 856, 864 (1) & n. 17 (834 SE2d 96) (2019).

he left the victim and did not know of her injuries in another conversation. Thus, the admission of the former statement did not require the admission of the latter.[16]

4. Finally, Wilkey argues that he received ineffective assistance of counsel. He raises two claims on this issue, but neither is persuasive.

> To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. This requires a defendant to overcome the strong presumption that trial counsel's performance was adequate. To carry the burden of overcoming this presumption, a defendant must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. If an appellant fails to meet his or her burden of proving either

---

[16] See *Danley*, 342 Ga. App. at 64 (3) (a).

prong of the *Strickland*[17] test, the reviewing court does not have to examine the other prong.[18]

(a).

Wilkey's first claim of ineffective assistance relates to jury selection. The record reveals that after Wilkey's trial started, the trial court learned that the individual who was serving as Juror Number 2 had not been summoned to serve as a juror for that term of court; the individual who appeared for jury duty was the adult son of the man who had been summoned. The trial court explained the situation to the parties outside the presence of the jury and asked if they wanted to replace the son with an alternate juror. Both the prosecutor and defense counsel responded that they saw no problem with the son serving on the jury, and defense counsel further stated that she "would be concerned about dismissing [him and then needing to] activat[e] the alternate should something else [happen.]"

At the hearing on Wilkey's motion for new trial, trial counsel explained that she did not object to the son's service as a juror because although he was not on the

---

[17] *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984).

[18] (Citations and punctuation omitted.) *Anthony v. State*, 311 Ga. 293, 294-295 (1) (857 SE2d 682) (2021).

master list of individuals who had been summoned for jury duty, he had gone through the jury selection process, appeared to be qualified to serve, and "seemed like a normal juror that we would want[.]" Counsel further testified that she was "sure" she had discussed the son's service with Wilkey because "he was heavily involved" in the jury selection process and was present in court when the situation was discussed. In rejecting Wilkey's claim of ineffective assistance on this ground, the trial court concluded that counsel's decision not to remove the son from the jury was "both strategic and patently reasonable," and that Wilkey failed to show he was prejudiced by counsel's decision.

On appeal, Wilkey contends that counsel's lack of objection constituted ineffective assistance because it meant that there was no meaningful discussion of whether the son was qualified to serve on the jury.[19] But trial counsel's decision not to object was clearly a matter of strategy, as she testified at the motion for new trial hearing that she believed the son was a good juror for the defense, and there is no

---

[19] Because the defense did not object to the son's service on the jury before the jury returned its verdict, Wilkey is now deemed to have waived any objection to that issue. See *Allen v. State*, 299 Ga. App. 201, 202-203 (1) (a) (683 SE2d 343) (2009) (where an individual who was not summoned was impaneled on the jury, defendant waived any objection to that juror's service by failing to raise the objection before the jury returned its verdict).

indication that her strategic decision not to object was unreasonable.[20] Moreover, Wilkey has not proffered any evidence suggesting that the son actually was not qualified to serve as a juror; he has not established, for example, that the son lived outside the county or had been convicted of a felony. To the contrary, the record reveals that the son answered questions on those issues during the jury selection process and that based on his answers, he appeared to be qualified to serve as a juror. Wilkey has, therefore, failed to demonstrate that trial counsel's failure to object to the son serving on the jury resulted in actual harm.[21]

(b)

Wilkey's second ineffective assistance claim relates to an alleged conflict of interest due to trial counsel representing both Wilkey, in this case, and the victim's son, Brandon Hulsey, in an unrelated case.

---

[20] See *Allen*, 299 Ga. App. at 204 (1) (b) ("Georgia law is clear that the decision on which jurors to accept and which jurors to strike is one of trial strategy.").

[21] See *Bright v. State,* 292 Ga. 273, 276 (2) (b) (736 SE2d 380) (2013) (absent a showing that the jurors who served on the jury were unqualified to do so, defendant failed to establish that counsel's failure to ask more questions during voir dire resulted in actual harm).

14

Wilkey raised this ground in his motion for new trial, and at the hearing on that motion, trial counsel testified that she began representing Wilkey in April 2013 and was assigned to represent Hulsey in an unrelated criminal case in August 2013. Counsel was on maternity leave from mid-August until mid-November, and when she returned from maternity leave she focused on Wilkey's case because it was going to trial in January. She did not recall ever discussing Wilkey's case with Hulsey, and she did not view Hulsey as an important witness for Wilkey's case because Wilkey was married to Hulsey's mother for only a few months before the incident and Hulsey was incarcerated for some of that time. The trial court determined that counsel's representation of Husley was not a conflict of interest because Hulsey was not a witness in Wilkey's case and there was no evidence that counsel had competing interests in representing the two defendants.

> To establish ineffective assistance of counsel due to a conflict of interest on the part of trial counsel, a defendant who raised no objection at trial must prove that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. Where the contention is only the possibility of conflict, this is insufficient to impugn a criminal conviction.[22]

---

[22] (Citation and punctuation omitted.) *Jones v. State*, 239 Ga. App. 832, 836-837 (2) (b) (521 SE2d 614) (1999).

On appeal, Wilkey asserts that trial counsel's performance in his case was adversely affected by her conflict of interest because it caused her not to interview Hulsey, the victim's son, to see if the victim had previously made statements regarding the facts of this case that differed from the account she gave at trial. Wilkey has not established, however, that counsel would have interviewed Hulsey for the instant case if she was not representing him in his own unrelated case, and nothing in the record suggests that counsel's decisions with respect to the instant case were at all related to her representation of Hulsey in his unrelated case. Instead, the record suggests that counsel did not interview Hulsey because, based on her conversations with other witnesses, she did not believe Hulsey would offer any useful information. Because Wilkey has failed to establish that trial counsel's alleged conflict of interest caused her to act differently than she otherwise would have, this ineffective-assistance claim fails.[23]

For the foregoing reasons, we affirm both Wilkey's conviction and the trial court's denial of his motion for new trial.

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[23] See id. at 838 (2) (b).