**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 3, 2025**

# In the Court of Appeals of Georgia

A25A1021. ROE v. THE STATE.

PIPKIN, Judge.

Appellant Phillip Anthony Roe was convicted at a bench trial of three misdemeanors: (1) sexual battery; (2) obstruction of a law enforcement officer; and (3) public drunkenness. Appellant does not challenge his conviction for public drunkenness. However, he contends that footage from the arresting officer's body camera contradicts the testimony of the witnesses at trial, rendering the evidence insufficient as a matter of due process to support his convictions for sexual battery and obstruction. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979). He also contends that the testimony, even aside from the allegedly

contradictory body-camera footage, was insufficient as a matter of due process to support his conviction for obstruction. See id. We affirm.

1. The following facts are undisputed. At around 10:00 p.m. on Saturday, August 6, 2022, Appellant and his fiancée went to a bar in Forsyth County. Appellant drank four or five vodka shots and a beer, and by 1:00 a.m. on August 7, he was heavily intoxicated and arguing with a group of men. At around 1:15 a.m., the argument was escalating to becoming a physical altercation, and the bar's security guards broke it up. At the security guards' request, two officers from the Cumming Police Department (CPD) who had been dispatched to the bar to respond to an unrelated incident told Appellant to leave. Appellant's friend Jonathan Herren led him by the arm through the crowd towards the front door, followed by the security guards and then the two CPD officers. As Appellant rounded a corner, he came face-to-face with Chasity Holbrook. When CPD Sergeant Shaw Bowman rounded the corner, he saw Holbrook with her right hand balled into a fist as though she was about to punch someone, although he did not know why. Sgt. Bowman shouted, "I don't know who you are[,] but you need to back the f*** up." Holbrook immediately complied.

Once outside the bar, Appellant stopped briefly in front of the door, and Sgt. Bowman told him that he needed to get in his car. Some of the men whom Appellant had been arguing with followed him outside, and Sgt. Bowman instructed Appellant to start walking towards his car to prevent an altercation. Appellant did not do so, and Sgt. Bowman threatened to arrest him if he did not start to leave. At that point, Herren grabbed Appellant by his upper body and began physically walking him towards the lower parking lot where Appellant's car was parked.

Several minutes later, Appellant began walking back towards the upper parking lot and the bar, so Sgt. Bowman went down to confront him and again told him to go and get in his car. Appellant instead stopped and leaned up against a friend's vehicle while smoking a cigarette. Sgt. Bowman told Appellant two or three more times that he needed to get into his car, where his fiancée was waiting, but Appellant refused and began arguing about who was going to take him home. Sgt. Bowman then sternly told Appellant to turn around, but when Sgt. Bowman grabbed Appellant's arm to handcuff him, Appellant moved away, and Sgt. Bowman took Appellant to the ground. In the process, Sgt. Bowman sprained three knuckles on his right hand. Sgt. Bowman ultimately was able to handcuff Appellant and take him into custody.

The parties dispute what happened at two discrete points in time: (1) when Appellant encountered Holbrook in the bar; and (2) when Sgt. Bowman attempted to handcuff Appellant and took Appellant to the ground. At trial, Holbrook testified that when Appellant came around the corner and was directly in front of her, he cupped her breasts with both hands and started smirking. She further testified that she did not know Appellant, had never met him before, and did not give him permission to touch her breasts. Sgt. Bowman testified that when he attempted to handcuff Appellant to place him under arrest, Appellant attempted to pull his arm away, offering "solid resistance," which forced Sgt. Bowman to take Appellant to the ground in order to effectuate the arrest. Sgt. Bowman also testified that he was engaged in the lawful discharge of his official duties when he was placing Appellant under arrest. In addition, the State introduced footage from Sgt. Bowman's chest-mounted body camera, which was played for the trial court multiple times.

Appellant elected to testify in his own defense. He testified that he did not recall grabbing Holbrook's breasts "at all" and did not remember anything about her. However, he admitted that he remembered Herren guiding him through the crowd and that "when we turned the corner[,] she just appeared right here." Appellant was

4

not asked about anything that happened outside the bar. Appellant also called his fiancée as a witness. She testified that she was behind the CPD officers as Appellant was being escorted out of the bar, that she did not see Appellant grab Holbrook's breasts, and that she had never seen him act that way towards any woman in a bar. However, she admitted that Appellant was "drunk" and that she did not know Holbrook and had never spoken to her. She provided no information about what happened outside the bar aside from her testimony that she was talking to the officers when Herren initially walked Appellant down to their car.

2. Appellant contends that the evidence was insufficient as a matter of due process to support his conviction for sexual battery because the footage from Sgt. Bowman's body camera contradicts Holbrook's testimony that Appellant grabbed her breasts. This claim fails.

When reviewing the sufficiency of the evidence to support a conviction as a matter of due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard "must be applied with explicit

reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. Under OCGA § 16-6-22.1 (b), a person commits the offense of sexual battery when he "intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." Subsection (a) of the statute defines "intimate parts" to include "the breasts of a female." Holbrook testified that Appellant grabbed her breasts without her consent, and Appellant's use of two hands and the smirk on his face both support a reasonable inference that he grabbed Holbrook's breasts intentionally. Based on this evidence, a rational trier of fact could have found the essential elements of sexual battery beyond a reasonable doubt. Accordingly, the evidence was sufficient as a matter of due process to support Appellant's conviction for sexual battery.

Appellant resists this straightforward conclusion based on what he claims is depicted in the footage from Sgt. Bowman's body camera. Appellant asserts that the body-camera footage admitted at trial "contradict[s]" Holbrook's testimony that he grabbed her breasts. And he contends that "[t]he law is clear that video evidence trumps testimonial evidence and that conflicting testimonial evidence should be disregarded," citing *Brooks v. Miller*, 78 F4th 1267 (11th Cir. 2023), and *Boyd v. State*,

315 Ga. App. 256 (726 SE2d 746) (2012), as support. However, neither *Brooks* nor *Boyd* involved a due process challenge to the sufficiency of the evidence to support a criminal conviction. See *Brooks*, 78 F4th at 1272 (affirming in part and reversing in part trial court's grant of summary judgment to police officer based on qualified immunity from plaintiff's § 1983 claims for false arrest, excessive force, and deliberate indifference to medical needs); *Boyd*, 315 Ga. App. at 256-262 (concluding based on de novo review of videotape of custodial interview that juvenile did not knowingly and voluntarily waive his right against self-incrimination). Moreover, the United States Supreme Court has specifically instructed us that "upon judicial review" of the sufficiency of the evidence to satisfy due process, "*all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original). We are not at liberty to substitute the totality-of-the-evidence review mandated by the United States Supreme Court with the novel videotape-trumps-testimony approach advanced by Appellant. See *Jackson*, 433 U.S. at 319 (explaining that requiring reviewing courts to consider "all of the evidence . . . in the light most favorable to the prosecution" preserves "the factfinder's role as weigher of the evidence," which includes "the responsibility . . . fairly to resolve conflicts in

the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts") (emphasis omitted). A rational trier of fact could well conclude, based on the body-camera footage and Holbrook's testimony, that Appellant intentionally cupped Holbrook's breasts with both hands without her consent. Accordingly, Appellant's due process challenge to the sufficiency of the evidence to support his conviction for sexual battery fails.

3. Appellant also contends that the evidence was insufficient as a matter of due process to support his conviction for obstruction of a law enforcement officer. This claim also fails.

A person commits misdemeanor obstruction of a law enforcement officer when he "knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties." OCGA § 16-10-24 (a). See also OCGA § 16-1-3 (8.1) (defining "[l]aw enforcement officer"). Sgt. Bowman testified that when he told Appellant to turn around and grabbed Appellant's arm to handcuff him, Appellant tried to pull his arm away, offering "solid resistance." Sgt. Bowman also testified that he was engaged in the lawful discharge of his official duties when he placed Appellant under arrest. Based on this evidence, a rational trier of fact could

have found beyond a reasonable doubt that Appellant knowingly and willfully obstructed or hindered Sgt. Bowman in the lawful discharge of his official duties. Accordingly, the evidence was sufficient as a matter of due process to support Appellant's conviction for misdemeanor obstruction of a law enforcement officer.

Appellant disagrees with this conclusion, primarily because of what he claims is depicted in the footage from Sgt. Bowman's body camera. Both parties point us to the footage from time stamp 33:24 to 34:41, with Appellant emphasizing in particular the footage from 34:15 to 34:22. According to Appellant, Sgt. Bowman had been telling him to walk away, and the footage shows that he began to do so before Sgt. Bowman told him to turn around and attempted to handcuff him. Appellant claims that "there is no video evidence to support a claim that [he] was resisting or attempting to pull away" from Sgt. Bowman. As noted above, the body-camera footage was not the only evidence that the trial court was allowed to consider at trial. Moreover, as the trial court found in its order denying Appellant's motion for new trial, the body-camera footage does not contradict, but rather is consistent with, Sgt. Bowman's testimony that Appellant tried to pull his arm away as Sgt. Bowman was attempting to handcuff him.

Appellant also argues that, even if he did try to pull away when Sgt. Bowman was attempting to arrest him, the evidence is insufficient to support his conviction for obstruction because the State failed to prove that he did so knowingly and willfully. However, based on Appellant's repeated refusals to comply with Sgt. Bowman's commands and his overall belligerent attitude, a rational jury could find beyond a reasonable doubt that Appellant acted knowingly and willfully when he tried to pull away as Sgt. Bowman was attempting to arrest him. Accordingly, Appellant's due process challenge to the sufficiency of the evidence to support his conviction for obstruction of a law enforcement officer fails.

*Judgment affirmed. Hodges, J., concurs. McFadden, P. J., concurs fully and specially.*

A25A1021. ROE v. THE STATE.


MCFADDEN, Presiding Judge, concurring fully and specially.

I concur fully but reluctantly. The video evidence leaves me troubled by these convictions, particularly the conviction for obstruction. But I must defer to the finder of fact.

The sexual battery conviction arises out of an interaction that occurred while two officers, along with one of Roe's friends, were escorting him out of a bar. But Roe was not arrested until several minutes later, during a second encounter with the arresting officer.

That second encounter occurred after the arresting officer determined that Roe's fiancée, rather than one of his friends, would be driving him home. The officer then approached Roe, who was waiting by his friend's car and smoking a cigarette; informed him that his fiancée would be driving him home; and directed him to go to her car.

Roe's response was argumentative but not combative. After a few exchanges, the officer abruptly administered a take-down. From the ground, Roe immediately announced, "I'm givin' up," while the arresting officer threatened to tase bystanders.

But the officer testified that Roe had tried to pull his arm away, offering "solid resistance." I know from my own life experience that it would be extraordinarily difficult, particularly under these circumstances, even for someone trained to receive such techniques without resisting, to refrain from pulling their arm back.

Nevertheless I must defer to the finder of fact. The officer's testimony is sufficient to sustain the trial court's judgment of conviction under the applicable standard of review. See *Price v. State*, 313 Ga. 578, 582 n.2 (872 SE2d 275) (2022) (on sufficiency review, after a bench trial, the judgment of conviction will be upheld "as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case") (citation and punctuation omitted).

The trial court has the authority to grant a new trial, even after a bench trial, *Smith v. State*, 350 Ga. App. 336, 337 (1) (829 SE2d 408) (2019), on the basis that the judgment of conviction is "contrary to evidence and the principles of justice and equity," OCGA § 5-5-20, or "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. We do not.

And it is vital to the rule of law that all courts, trial and appellate, respect the limits of their authority.